**STATE ex rel. Theodore D. McNEAL, President, et al., Relators (Respondents),**

v.

**John G. ROACH et al., Respondents (Appellants).**

**No. 58884.**

Supreme Court of Missouri, En Banc.

March 28, 1975.

Lashly, Caruthers, Thies, Rava & Hamel, John H. Lashly, Albert J. Stephan, Jr., Darold E. Crotzer, Jr., St. Louis, for respondents.

Jack L. Koehr, City Counselor, Eugene P. Freeman, Deputy City Counselor, St. Louis, for appellants.

Sestric, Sestric, Sweet & McGhee, Anthony J. Sestric, St. Louis, amicus curiae.

MORGAN, Judge.

In the trial court, the Board of Police Commissioners for the city of St. Louis sought a writ of mandamus to compel said city, and the Mayor and Board of Aldermen thereof, to appropriate the amount of $39,524,490. as the sum estimated to meet the expenses of the St. Louis Metropolitan Police Department for the then ensuing fiscal year of 1974–1975. A peremptory writ was issued, and the city and officers thereof have appealed. We affirm.

Section 84.210(1), RSMo 1969, V.A.M.S., provides, in part, that the Board of Police Commissioners has the duty ". . . to prepare, in writing, an *estimate* of the sum of money which will be necessary for each current fiscal year, to enable them to discharge the duties hereby imposed upon them, and to meet the expenses of the police department, and they shall forthwith certify the same to the board of common council or municipal assembly, as the case may be, of said cities, *who are hereby required to set apart and appropriate the amount so certified,* payable out of the revenue of said cities, after having first deducted the amount necessary to pay [other listed expenditures]." (Emphasis added.)

On previous occasions, this court has been called on to consider the subject and delineate the rights, duties and responsibilities of the occupants of the public offices involved. To the credit of the instant parties and their predecessors, need for doing so has arisen infrequently; and, this is true even though the basic statutory scheme stems from an Act of March 15, 1899 (Laws 1899, p. 51). State v. Mason, 153 Mo. 23, 54 S.W. 524 (Mo.banc 1899); State v. Gunn, 326 S.W.2d 314 (Mo.banc 1959); and, State ex rel. Sanders v. Cervantes, 480 S.W.2d 888 (Mo.banc 1972). Compare State v. Jost, 265 Mo. 51, 175 S.W. 591 (Mo.banc 1915); State v. Beach, 325 Mo. 175, 28 S.W.2d 105 (Mo.banc 1930); and, State v. Smith, 329 Mo. 1019, 49 S.W.2d 74 (Mo.banc 1932), which involved a comparable Act applicable to Kansas City.

After a rather extended hearing wherein a representative number of individuals from each office involved did testify and relevant records were submitted as exhibits, the trial court entered fifteen (15) Findings of Fact and fourteen (14) Conclusions of Law. From the record before us, it is not inappropriate to state that each "finding" is sustained by the evidence, and that each "conclusion" is in accord with the existing law in this state as it is re-

flected in the cases heretofore cited. Such "findings" are, in part, as follows:

1. Relators are members of the Board of Police Commissioners of the City of St. Louis, duly appointed and acting pursuant to Chapter 84, R.S.Mo. 1969, as amended. (Relators will be referred to as the Police Board). The Honorable John H. Poelker is an ex officio member of the Board of Police Commissioners of the City of St. Louis. However, he was joined in this cause as a respondent in his capacity as Mayor of the City of St. Louis.

2. Respondents other than respondent Poelker are members of and constitute the Board of Aldermen of the City of St. Louis and the Board of Aldermen is the municipal assembly of the City, responsible for legislative enactments, including the appropriation of revenue. (Respondents, collectively, will be referred to as the City).

3. On or about April 4, 1974, the Police Board transmitted to the Board of Aldermen and the Board of Estimate and Apportionment a document (Relators' Exhibit A) certifying the amount necessary to enable the Police Board to discharge the duties imposed upon it by law and to meet the expenses of the Police Department of the City of St. Louis for the 1974–1975 fiscal year (May 1 through April 30), to-wit: the sum of $40,089,520.

4. Between April 3 and May 13, 1974, respondent Poelker met with the Police Board. Thereafter, on May 13, 1974, the Police Board transmitted to the Board of Estimate and Apportionment of the City of St. Louis a document, (Relators' Exhibit B), certifying a revised budget showing the sum of money necessary for the 1974–1975 fiscal year to enable the Police Board to discharge the duties imposed upon

it by law and to meet the expenses of the Police Department of the City of St. Louis, to-wit: the sum of $39,524,490.

5. The amount of $39,524,490 was approved by the Board of Estimate and Apportionment and forwarded to the Board of Aldermen on or about May 17, 1974, in the budget recommendations of the Board of Estimates and Apportionment.

6. The Ways and Means Committee of the Board of Aldermen approved the amount of $39,524,490 by including it in Substitute Board Bill No. 1 of the Board of Aldermen of the City of St. Louis, 1974–1975.

7. When Substitute Board Bill No. 1 came before the Board of Aldermen, an amendment to the Bill was offered and adopted by the Board of Aldermen, without the consent of the Police Board. This amendment added after the "Total" figure of $39,524,490 the words and figures:

'Less Estimated Reversions of .............. 500,000
Total Net       $39,024,490'

8. On June 21, 1974, respondent Poelker, in his capacity as the Mayor of the City of St. Louis, signed Substitute Board Bill No. 1, as amended, the same now being known as Ordinance 56734 of the City of St. Louis.

9. In his capacity as the Chief Fiscal Officer of the City of St. Louis, the Comptroller prepared a monthly appropriation ledger for the St. Louis Police Department showing, among other things, the amount of money appropriated for each specific account within the Police Board's budget. The Comptroller's appropriation ledger of June 30, 1974, reflects the $500,000 reduction in this budget (Relators' Exhibit L).

With the exception of Account No. 171, representing $10,000,000 in feder-

al revenue sharing funds, the Comptroller's appropriation ledger reflects a reduction in each account of the Police Board budget of approximately 1.69%. * * *

10. In the Joint Return of the City to the Alternative Writ issued by this Court and by evidence adduced at the trial, the City challenged the legality of expenditures for the establishment and functions of the Community Relations Division of the St. Louis Police Department. The Division is under the supervision of Robert J. Barton, a civilian. It is staffed by one sergeant, eighteen patrolmen and a number of civilian clerks. The Division uses eleven vehicles and operates seven store-front locations within the City of St. Louis. The functions of the Community Relations Division include, among other things, participation in the following programs: Lock It and Pocket the Key, Block Watcher, Operation Ident, Women's Crusade Against Crime, Officer Friendly, Police Athletic League, and Explorer Scout. The common aim of all functions of the Community Relations Division is to prevent crime, to gather information concerning crime and to assist the police officer on the street so that he may perform his functions more effectively.

11. The Police Board has entered into and implemented an agreement with a not-for-profit corporation known as Regional Justice Information System (REJIS) for computer services. The principal services rendered to the St. Louis Police Department by REJIS are the storage and retrieval of information relating to crimes and criminals. The information is stored on magnetic tapes, discs and punch cards and, aside from the input terminals, the 'data banks' and ancillary machinery are within the physical control of REJIS and its employees.

The determination of the type, nature and extent of the information to be stored and/or retrieved is made by the Police Department. This information includes, among other things, arrest records, occurrences of crimes by number and defined categories, identity of persons arrested and their history while in police custody, wanted persons who have not been apprehended, statistical reports, and the like. Although the Police Department determines and controls the type, nature and extent of the information to be stored and retrieved, the operations of submitting the information to and retrieving the information from the data banks are conducted by employees of REJIS.

* * * * * *

13. At the close of the fiscal year 1972–1973, $676,637.00 remained unexpended in the budget of the Police Board, and, at the close of the fiscal year, 1973–1974, $681,753.00 remained unexpended in the Board's budget. These unexpended funds, commonly referred to as 'reversions', do not represent an actual transmittal of funds between the City and the Police Board but, rather, merely reflect, through the accounting procedures of the City and the Board, the difference between the City's appropriation for the fiscal year in question and the amount spent by the Board during that year.

14. On August 26, 1974, the Police Board adopted hearing procedures to be implemented on October 1, 1974. The details of these procedures are set out in Respondents' Exhibit 8. In general, the procedures provide for the hearing of certain complaints against police officers and, among other things, provide for the use of lawyers in private practice as hearing officers. There was no evidence that any expenditures have, as yet, been made to implement this proce-

dure nor was there evidence as to the cost of its implementation and possible use during fiscal 1974–1975.

\*   \*   \*   \*   \*   \*

We, as was the trial court, are somewhat apprehensive as to whether a justiciable legal question actually is involved or if the better solution could be found in a more refined end-of-year financial record-keeping system, within which the parties could avoid all conflicts. As testified to by the Mayor: "The only time it becomes an issue . . . is when it gets close to the end of the year. . . ."

In its "conclusions," the trial court quoted from the most recent expression of this court on the question in State ex rel. Sanders v. Cervantes, supra. Therein, it was held that (1) the city could not substitute its judgment for that of the police commissioners as to what funds were necessary to maintain the police department; and, (2) that any challenge to the "estimate" submitted could not be premised on discretionary grounds, but only because the proposed expenditure was (a) illegal or (b) an unreasonable exercise of the discretionary power given by the state to the Board of Police Commissioners. "Our system of government accepts the necessity of providing such a review of the acts of any public official or administrative agency of this state." 480 S.W.2d at 890–891.

As the trial court said: ". . . in the instant case, the City did not 'challenge' specific expenditures listed in the Police Board's budget but, rather, after the City's Board of Estimate and Apportionment had approved the budget, the City, at first, 'challenged' the budget through its Board of Aldermen reducing the budget by deducting 'estimated reversions of $500,000.-00' from the total budget. Insofar as the record before this Court is concerned, this reduction by the Board of Aldermen did not 'challenge' the legality or reasonableness of any particular line item account or specific expenditure in the Police Board's present budget but simply 'challenged' the total budget without explicit reasons, except inferentially perhaps, that it would be unreasonable not to expect a $500,000.00 reversion from the present budget. \* \* \* From these facts, the Police Board sensibly argued that the City's 'challenge' to the Police Board's budget was an 'across-the-board' non-specific reduction, . . . ." By the existing law, such a broadside attack was unauthorized. In apparent recognition of this fact, the city submitted that it could not challenge specific expenditures as illegal or unreasonable, because " . . . it is the practice [of the Police Board] not to send the print out of the details of the budget . . . ." In contrast thereto, the "estimate" forwarded is divided merely into general broad categories, and the right to transfer funds, as needed, from one account to the other is reserved. No comment on such a practice is needed at this point as it had no effect on the instant case. With the Mayor of the city as a witness, the following occurred:

Q   . . . you requested detail budgets in this fiscal year period?

A   Yes, after the budget request was received by the City I asked for a copy of the details.

Q   Did you receive that copy, sir?

A   Yes, I did.

By its pleadings in the mandamus proceeding, however, the city did challenge three specific expenditures proposed to finance (1) the Community Relations Division, (2) computer services of the Regional Justice Information System (REJIS), and (3) hearing procedures reference complaints against police officers, as covered in the trial court's Findings of Fact—Nos. 10, 11 and 14, respectively. The validity of each was accepted by the trial court as a viable issue, as this court did in State v. Gunn, supra, 326 S.W.2d l.c. 324, when it said: "The amounts are either lawfully included within the budget or not, and so far as not paid may be contested."

In its Conclusions of Law, the three issues were resolved as follows:

(1) Re—the Community Relations Division (finding no. 10):

7. The establishment and operation of the Community Relations Division is a proper and lawful police function and does not constitute an abuse of discretion on the part of the Police Board. This Division is consistent with Section 84.090 R.S. Mo.1969, [V.A.M.S.] which mandates that the Board of Police Commissioners of the City of St. Louis shall preserve the public peace and prevent crime.

(2) Re—REJIS computer service (finding no. 11):

8. The contract with REJIS and the implementation thereof is proper in light of the duties imposed upon the Police Board by Sections 84.010 through 84.340, R.S.Mo.1969, [V.A.M.S.] as amended. The evidence has not established that this contract is illegal.

(3) Re—hearing procedures (finding no. 14):

10. The hearing procedures referred to in Finding of Fact No 14 are authorized by Sections 84.120 and 84.170, R.S.Mo.1969 [V.A.M.S.] and 84.150, R.S.Mo.Cum.Supp.1973 [V.A.M.S.]. The hearing procedures are, therefore, not illegal and do not constitute an abuse of discretion by the Police Board.

■ In reaching such conclusions, the trial court in each instance considered "whether the budgetary act in question was reasonably related and had a rational nexus to the properly authorized powers of the Police Board." Use of such a standard as a guide for review was legally correct. After the second "look" taken by this court, we agree with each conclusion made. It cannot be declared as a matter of law that (1) bringing the police effort closer to the people with the hoped for objective of greater cooperation, (2) use of a broadened computerized record-keeping system operated in conjunction with other agencies involved in crime control, (3) nor the establishment of a more neutral, or detached, hearing procedure for resolving citizens' complaints against police activities are illegal or an unreasonable exercise of the powers granted by the relevant statutes. Absent such a holding, it is not for the city nor the courts to interfere with the manner in which the Board of Police Commissioners seeks to comply with the mandate given it by the General Assembly.

■ The trial court granted *Amicus* status to one alleged taxpayer who raised a separate and distinct question which has been carried forward on appeal. It can be summarized fairly as follows: that § 84.-210(1), and other sections designated in the statutes as applicable to St. Louis, were designed for cities having a population over 700,000 and have no actual limitation on police expenditures; that § 84.350, and other sections designated in the statutes as applicable to Kansas City, and covering "all cities of this state that now have, or may hereafter have, three hundred thousand inhabitants and not over seven hundred thousand . . ." limit police expenditures (in § 84.730) to not more than "one-fifth of the general revenue fund of such year" as anticipated by the city; that the Decennial Census of 1950 reflected that St. Louis had a population of 852,623, that for 1960 a total of 750,026 was shown and that of 1970 listed the population as 622,236; that the present population is less than 700,000 and the "one-fifth" limit in § 84.350 is applicable. On this point, the trial court in "conclusion" No. 12 ruled that: "The argument of amicus that Sections 84.350 through 84.-860 R.S.Mo.1969, as amended, apply to the government of the Board of Police Commissioners of the City of St. Louis is without merit. The population of the City of St. Louis, as reflected by the 1960 United States decennial census, was 750,026 per-

sons. Relevant to this proceeding, Section 1.100 R.S.Mo.1969, V.A.M.S., provides that the effective date of any change in the United States census is July 1, 1971. Therefore, the population with respect to Chapter 84, R.S.Mo.1969, as amended, was over 700,000 persons until July 1, 1971. * * * The General Assembly amended Section 1.100 and said amendment became effective June 8, 1971, by operation of an emergency clause. The amendment provides in part: 'Once a city not located in a county has come under the operation of such a law, a subsequent loss of population shall not remove that city from the operation of that law.' Therefore, the General Assembly intended, and the Court finds, that a decrease in population does not affect the applicability of Sections 84.010 through 84.340, R.S.Mo.1969, V.A.M.S., as amended, to the Board of Police Commissioners of the City of St. Louis. The Court further concludes that Sections 84.350 through 84.860, R.S.Mo.1969, V.A.M.S., as amended, do not apply to the Board of Police Commissioners of the City of St. Louis and therefore Amicus' Exhibit A is not determinative of any issue in this cause." We agree. Within the last few weeks, this court in State ex rel. McClellan v. Godfrey, 519 S.W.2d 4 (handed down February 21, 1975) took judicial notice of the fact that St. Louis is the only city "not located in a county." Clearly, the legislative amendment just noted was passed for the purpose of continuing the same scheme reference police expenditures in St. Louis. With the legislative intent being so obvious, we are not inclined to ignore the same. It should be mentioned, also, that the city suggests the argument is without merit. Merely as an observation, we do note that the argument is not one of great moment. If fixed obligations are ignored, a budget of forty million could not be too far from "one-fifth" of total revenue of over two-hundred million.

The city, in a further effort to bolster its defense, did interject a complaint that the Police Board failed to remit to the city with regularity funds derived other than from appropriations. Such funds are received from sale of police reports, recoveries for damage to patrol cars and other equipment and other police activities. We agree with the trial court, as in fact all of the parties do, that accounting problems in this area are not related to the immediate issues. It is conceded that such "activity created" funds belong to the city. Nevertheless, the record reflects that the Police Board allowed the same to accumulate to an amount of $1,066,572.13 between May 1, 1969, to April 30, 1972, prior to transfer to the city. For 1973 and 1974, it appears the transfer was on a yearly basis. In passing, however, we do comment that there is no logical reason why such funds should not be made available to the city on fixed and regular dates so that they would be available for budget needs. Perhaps the legal action, suggested by the trial court, will not be necessary.

Lastly, we consider "end-of-year" record-keeping problems, which will confirm that our initial comment that accounting and not legal solutions were needed was not facetious. All parties agree that the city has met its statutory duty of paying every obligation created by the Police Board; in fact, supplemental appropriations have been made in the past.

As the end of the fiscal year on April 30 approaches, it is the practice of the city to require that requisitions for the year be submitted by February 15 and that vouchers for actual payment be filed by March 29. Many planned expenditures for the year have not been finalized before this two and one-half months period arrives; and the departments, in contemplation of obligations expected to be payable in the period, file what is identified as a "hold-check." The amount is then transferred to a special account and constitutes a modified accounts payable for payment when due. The uncertainties arise when planned expenditures are not consummated by April 30 or possibly even abandoned, and potential "reversions" are created. Since each of the parties has expressed confidence in

the good faith of the other, they undoubtedly can devise a plan to distinguish between the two possibilities and classify funds accordingly. Absent such a cooperative approach, it should be possible to find the answers in the "annual report" of the Police Board to the city as required by § 84.250, and which provides, in part, that: "The board shall cause a full journal of their proceedings to be kept, and also cause all their receipts and disbursements of money to be faithfully entered in books . . . open to the inspection of the general assembly . . . [and] the common council or municipal assembly of the said city . . . [and] all such other matters as may be of public interest, in connection with the duties assigned it by sections 84.-010 to 84.340."

The judgment is affirmed.

DONNELLY, C. J., SEILER, BARDGETT, HENLEY and FINCH, JJ., and SOMERVILLE, Special Judge, concur.

HOLMAN, J., not sitting.