METAL FORM CORPORATION,
Respondent,

v.

George C. LEACHMAN, Appellant,

MESKER–CLARK, INC., Respondent,

v.

George C. LEACHMAN, Appellant.

Nos. 61482, 61483, 61484 and 61485.

Supreme Court of Missouri,
En Banc.

Feb. 22, 1980.

Rehearing Denied March 20, 1980.

Thomas W. Wehrle, George W. Lang, II, Clayton, for appellant.

Donald S. Hilleary, Dennis J. Lenard, Susan E. Blaney, Clayton, for respondent.

Robert W. Copeland, Stephen C. Turley, Clayton, for amicus curiae Cooperating School Dist. of St. Louis Suburban Area, et al.

R. Jay Ingraham, County Counselor, Michael F. Dandino, Assoc. County Counselor, Kansas City, for amicus curiae Jackson County.

John H. Bracken, Kansas City, for amicus curiae Missouri School Boards Ass'n.

William E. Buckley, Mark D. Mittleman, St. Louis, Edward Matheny, Shirley Ward Keeler, Kansas City, for amicus curiae St. Louis City School Dist. and Kansas City School District.

Albert A. Michenfelder, Jr., Harold A. Tzinberg, Clayton, for amicus curiae St. Louis County Library District, et al.

David Brydon, Jefferson City, for amicus curiae Missouri Auto Dealers Ass'n.

JAMES A. FINCH, Jr., Senior Judge.

This consolidated appeal involves four cases wherein plaintiffs Metal Form Corporation (Metal Form) and Mesker-Clark, Inc. (Mesker) sought recovery of manufacturers' license taxes for 1977 and 1978 which they had paid under protest. These taxes had been paid pursuant to assessments made under §§ 150.300 to 150.370 [1] which require that manufacturers be licensed and taxed on their raw materials and finished products, as well as the tools, machinery and appliances used by them, the ad valorem tax so imposed to be equal to that imposed on real estate. The assessments were based on the highest amount of raw materials and finished products, plus tools, machinery and equipment, which taxpayer had on hand at any time between the first Monday in January and the first Monday in April of the year involved. The trial court held the manufacturers' license tax statute to be unconstitutional and ordered that the taxes paid under protest should be refunded. Defendant Leachman, the County Collector, then appealed. We have jurisdiction because construction of the revenue laws of the state is involved. Mo.Const., art. V, § 3. We reverse and remand with directions.

Metal Form is a welded fabrications manufacturer in St. Louis County. Its assessed valuations for 1977 and 1978 were $22,780 and $21,620. Taxes paid thereon were

---

1. All statutory references are to RSMo 1969 unless otherwise indicated.

$1,784.17 for 1977 and $1,695.51 for 1978. Mesker, also located in St. Louis County, is a manufacturer of steel doors and frames. It paid taxes for 1977 and 1978 of $15,987.86 and $14,414.34 on the basis of assessed valuations of $199,300 and $183,850.

Payment of these taxes under protest was authorized by § 139.031 RSMo 1969 as amended by Laws 1971, p. 204, § 1. Subsection 139.031.1 thereof provides in pertinent part:

"Any such taxpayer desiring to pay any taxes under protest shall, at the time of paying such taxes, file with the collector a written statement setting forth the grounds on which his protest is based, and shall further cite any law, statute, or facts on which he relies in protesting the whole or any part of such taxes."

Pursuant to said statutory requirement each payment of taxes was accompanied by a letter addressed to the County Collector which advised that the taxes were paid under protest as authorized by § 139.031. The explanation given therein was that the statutes in question (§§ 150.300 to 150.370, and particularly §§ 150.310 and 150.320) violate art. X, § 4(a) of the Missouri Constitution which, after providing that all taxable property shall be classified for tax purposes as class 1, real property, class 2, tangible personal property or class 3, intangible personal property, states in pertinent part:

"The general assembly, by general law, may provide for further classification within classes 2 and 3, based solely on the nature and characteristics of the property, and not on the nature, residence or business of the owner, or the amount owned."

The letters pertaining to the 1977 taxes (cases 61482 and 61485) gave no further explanation. The letters protesting payment of the 1978 taxes (cases 61483 and 61484) contained this additional paragraph:

"The manufacturer's license tax, Section 150.300 to Section 150.370 inclusive, violates Article 10, Section 4(a) of the Missouri Constitution on its face in taxing Manufacturers upon a subclassification of property based upon the nature, residence and business of the owner and the amount owed (sic) and not solely by the nature and characteristics of the property."

Within the time limit specified in § 139.-031.2 (ninety days after filing of protest), plaintiffs filed petitions in the Circuit Court which sought recovery of the taxes paid under protest. These petitions alleged that the taxes had been paid under protest, that the checks given in payment had been accompanied by letters alleging unconstitutionality of the taxing statute and that copies of the letters were attached. As previously noted, the only constitutional provision asserted in the letters to have been violated was art. X, § 4(a).

At the time these cases were submitted to the trial court for decision, plaintiffs amended their petitions to allege that in addition to being an unauthorized subclassification of tangible personal property contrary to art. X, § 4(a), the taxing statute also violated art. X, §§ 3 and 6 of the Missouri Constitution. It asserted that having the tax levied on the greatest amount of such property on hand between the first Monday in January and the first Monday in April rather than January 1, the date used by other taxpayers, was contrary to the uniformity clause of art. X, § 3, and that excluding manufacturers whose raw materials, finished products, tools, machinery and appliances aggregated less than one thousand dollars[2] established an unconstitutional exemption contrary to art. X, § 6.

The trial court held that the manufacturers' license tax violates art. X, §§ 4(a) and 6 but not § 3. On appeal plaintiffs continue to assert that the tax is in violation of all three constitutional provisions.

We conclude and hold that the single issue presented for decision is whether the tax creates an impermissible subclassifica-

2. Section 150.310.3 provides that §§ 150.300 to 150.370 shall not be construed to apply to manufacturers whose raw materials, finished products, tools, machinery and appliances aggregate less than one thousand dollars.

tion of tangible personal property in violation of art. X, § 4(a). That was the only infirmity asserted by plaintiffs in the letters which accompanied their protested tax payments. Said letters made no reference to Mo.Const., art. X, § 3 or 6 and did not rely thereon as a basis for protesting payment of the taxes. Therefore, plaintiffs have not timely raised those issues as the legislature clearly required when it stated in § 139.031.1 that a taxpayer paying under protest shall specifically set out the grounds on which the protest is based and the law or statutes on which he relies.

We should and do enforce this explicitly stated statutory requirement, the justification for which is apparent. Payment of taxes under protest requires that those funds be impounded by the collector until the protest is resolved. The various agencies (counties, cities, school districts, library districts, etc.) to which such taxes are to be distributed for use in their current operations are denied those funds during that time. The effect on such agencies, where, as here, very substantial sums are paid under protest, can inhibit their ability to pay necessary expenses and hence be very detrimental. Therefore, it is important, as the legislature recognized, that payment under protest be on the basis of a then perceived specific entitlement to relief, and not on the basis of a general claim which taxpayer hopes he may substantiate later by finding some justification and authority. Accordingly, we limit our consideration to the alleged violation of art. X, § 4(a) asserted in the letter of protest which accompanied the tax payments. We do not reach or consider

in this case the claim of plaintiffs that the manufacturers' tax statutes violate the uniformity requirement of art. X, § 3 [3] or the claim that the exclusion of small manufacturers under the provisions of § 150.310.3 violates art. X, § 6 by granting an unauthorized exemption.[4]

■ In deciding this case we note at the outset that there are no issues of fact to be resolved. The cases were submitted on agreed statements of fact. The issue of whether §§ 150.310 and 150.320 violate art. X, § 4(a) involves only a question of law. In resolving that question we need not defer to the conclusion of the trial court on that issue. *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976).

In deciding that the manufacturers' license tax improperly subclassifies tangible personal property in violation of art. X, § 4(a), we believe that the trial court proceeded on an incorrect premise. Its opinion states that prior to the adoption of the 1945 Constitution the legislature had a free hand to classify property for purposes of taxation and that the adoption of art. X, § 4(a) placed limitations on that previously existing power. Actually, there was no right to classify property for tax purposes before adoption of the 1945 Constitution. Art. X, § 4 of the 1875 Constitution provided that "[A]ll property subject to taxation shall be taxed in proportion to its value." That provision was interpreted in several cases by this court to place all taxable property into a single class and to prohibit the legislature from dividing the property into different classes for purposes of taxation. *State ex rel. Tompkins v. Shipman*, 290 Mo.

---

**3.** We note that Senate Bill 425, signed August 6, 1979, amended § 150.320 to provide for assessment on the basis of raw materials, finished products, tools, machinery and appliances on hand on January 1 rather than on the basis of the highest amount of such items between the first Monday in January and the first Monday in April. Hence, any claimed violation of art. X, § 3 has been eliminated as to assessments subsequent to the effective date of Senate Bill 425.

**4.** It is reasonable to conclude that small manufacturers were excluded from the group to which the manufacturers' license tax was made

applicable in order to avoid requiring them to do the detailed record keeping and reporting required by that act and because any fluctuations in amounts held by such manufacturers necessarily would be minimal. The change in the date of assessment to January 1, noted in ftn. 3, supra, would seem to have eliminated any need for the exclusion of small manufacturers as provided in § 150.310.3. Repeal of that subsection would appear to be indicated. If that were done any contention that the exclusion provided in § 150.310.3 violates Mo.Const., art. X, § 6, would be eliminated as to future assessments.

65, 234 S.W. 60 (banc 1921); *Boonville Nat. Bank v. Schlotzhauer, County Collector*, 317 Mo. 1298, 298 S.W. 732 (1927); *Jefferson City Bridge and Transit Co. v. Blaser*, 318 Mo. 373, 300 S.W. 778 (1927).

■ The concept of classifying property for tax purposes into separate classes of real property, tangible personal property and intangible personal property and of authorizing further subclassification of tangible and intangible personal property was introduced in Missouri by the adoption of art. X, § 4(a) of the 1945 Constitution. That section was drafted and adopted as a grant of additional authority to the legislature, not a limitation on preexisting authority. The proceedings and debates of the convention which drafted what became the 1945 constitution clearly so show. It is proper to consult such proceedings and debates in determining the purpose and meaning of constitutional provisions although such proceedings and debates do not have binding force on the courts. Their persuasive effect depends upon the circumstances of each case. *State ex rel. Shipley v. Gamble*, 280 S.W.2d 656 (Mo. banc 1955).

It is clear that members of the constitutional convention were of the view that the 1875 Constitution prohibited classification of property for purposes of taxation. In its final report to the convention the Committee on Taxation—Levy, Assessment and Collection included the following remarks relative to its proposed § 4 of the article on taxation:

"This section is entirely new. It eliminated from Section 4 of the present Constitution the requirement that all property shall be taxed in proportion to its value, which was construed by the Supreme Court of Missouri as placing all property in a single class so far as the basis of taxation is concerned." Files, The 1943–1944 Constitutional Convention of Missouri, File 19, p. 9.[5]

5. For convenience, hereinafter cited as Files.

6. For convenience, these debates are cited hereinafter as Transcript.

This understanding of the then existing situation was confirmed by delegate Meador in his opening remarks during debate on this section which as ultimately amended became art. X, § 4(a). He noted that Missouri was one of only six states which still retained a general property tax "that prohibits classification in the Constitution." Transcript of Debates of the Missouri Constitution 1945, p. 6288.[6] He and others spoke of the experience of other states which had adopted classification and proposed that this additional authority should be granted in the new constitution. We find nothing in the debates which indicates that any delegate was of the opinion that a right to classify property for tax purposes existed in Missouri at that time.

The committee report also makes it clear that classification for tax purposes as authorized in art. X, § 4(a) was intended to permit taxation of various classes of property at different rates. It states:

"The Section divides all property subject to taxation into three classes and authorizes the General Assembly to provide for further classification within each class.[7] *It provides a means whereby different types of property may be accorded different treatment, so far as the burden of taxation is concerned.* Under the present Constitution the tax rates have proven so confiscatory when applied to money, bonds, notes, and other types of intangible personal property, that the law has been openly and flagrantly disregarded and dishonest returns are filed as a matter of course. The general property tax, as applied to this type of property, has been aptly described as a 'tax on ignorance and honesty.'" (Emphasis supplied). Files, File 19, p. 9.

The purpose of classification as used in art. X, § 4(a) also is evident from the opening remarks of delegate Meador. In the course of those remarks he stated:

7. Eventually the section was amended to permit subclassification of tangible and intangible personal property but not of real property.

"Now, let's take up the first, this matter of classification. What does classification mean? It simply means that either the Constitution or the Legislature, in some states it is the Constitution and some states it's the legislature, shall divide property into three major classes, real estate, tangible personal property and intangible property, and make some provision if it is deemed wise, for certain subdivisions, especially of the third class. In some states subdivisions are made of the first class and of the second class, but if this amendment is adopted as presented by Mr. Shepley, the Legislature would have the power to subdivide the second and third classes for purposes of taxation and would not have the power to subdivide into further classification, real estate and things pertinent to real estate." Transcript, p. 6287.

Later delegate Meador, when discussing the meaning and effect of classification, said:

"Now, we may classify property into different classes and apply one rate to one class and a different rate to a different class, or we may apply the same rate to both classes but assess one class as percentages of its value." Transcript, p. 6289.

Similar recognition appears in remarks of delegate Phillips who favored classification into the three general categories of real, tangible and intangible but sought to eliminate authorization for further subclassification:

"Classification in its truest sense is providing for the placing of property of a certain nature in one class and prescribing different rates for classification (sic) * * *." Transcript, p. 6303.

■ We are persuaded and hold that classification of property for tax purposes, as that term is used in art. X, § 4(a), means putting property of a certain nature into one class and other property into a different class and then taxing them differently, either by prescribing a different tax rate as to each or by assessing the classes at different percentages of value. This is true whether we deal with a division into separate categories of real, tangible and intangible property or whether it involves subclassification of either tangible personal property or intangible personal property.[8]

■ In the light of this meaning of classification, do §§ 150.310 and 150.320 result in subclassification of tangible personal property based on the nature and business of the owner and which therefore violates the provision of art. X, 4(a)? We conclude not. These sections do not call for or result in taxing the enumerated tangible personal property of manufacturers at different rates or on the basis of different percentages of valuation than tangible personal property of other owners taxed under Chapter 137. As a matter of fact it was stipulated by the parties that the basis of valuing plaintiffs' property and the rate of tax imposed thereon would be the same whether it was taxed under Chapter 137 or under §§ 150.310 and 150.320. In both instances the property would be taxed on the same basis as real estate. Thus §§ 150.310 and 150.320 do not produce classification within the meaning of that term as used in art. X, § 4(a). Instead, they simply spell out a process to be utilized in assessing certain property of designated manufacturers which is different from that prescribed for owners who are assessed and pay under Chapter 137. Such a difference in method of assessment does not result in subclassification in violation of art. X, § 4(a). *State ex rel. Howard Electric Cooperative v. Riney*, 490 S.W.2d 1 (Mo.1973). Since it does not constitute subclassification under art. X, § 4(a), it obviously cannot violate the requirement in said section that any sub-

---

**8.** Of course, subclassification of tangible personal property or of intangible personal property for the purpose of taxing the subclassifications at different rates (or on the basis of different percentages of valuation) would violate art. X, § 4(a) unless such subclassification were based on the nature and characteristics of the property rather than on the nature, residence or business of the respective owners or on the amounts owned by them.

classification not be based on the nature, residence or business of the owner.[9]

■ Plaintiffs also contend that § 150.-310.3 violates art. X, § 4(a) because it results in a subclassification on the basis of the amount of property owned. Again we conclude otherwise. Section 150.310.3 does not undertake to subclassify similar property for the purpose of taxing it at different rates or assessing it at different percentages of true value. It simply says that the manufacturers' license tax (§§ 150.300 to 150.370) does not apply to manufacturers whose finished products, raw materials, tools, machinery and appliances aggregate less than one thousand dollars. As to those small manufacturers the situation is the same as though the manufacturers' license tax had not been enacted. Therefore, those taxpayers remain subject to Chapter 137 which governs generally the assessment and levy of property taxes and which provides in § 137.075 that "[E]very person owning or holding real property or tangible personal property on the first day of January including all such property purchased on that day, shall be liable for taxes thereon during the same calendar year." The tax imposed on tangible personal property under Chapter 137 and under §§ 150.310 and 150.320 is the same. Therefore, § 150.310.3 cannot constitute a subclassification of tangible personal property for the purpose of taxing the two subclassifications at different rates. It merely results in different procedures for assessment. It does not violate art. X, § 4(a).

■ Plaintiffs argue that this cannot be so because § 137.340, applicable to first class counties, exempts manufacturers from the requirement to file an itemized return listing all tangible personal property owned or controlled on January first. We disagree. Section 137.340 requires in first class counties that certain returns be filed by all owners of tangible personal property subject to taxation under the laws of Missouri "except merchants and manufacturers, and except railroads, public utilities, pipe line companies or any other person or corporation subject to special statutory tax requirements." It is apparent from that language that the legislature was undertaking to exempt from the reporting required by § 137.-340 only those persons and corporations, including the specific types enumerated, who are subject to special statutory provisions which govern their reporting and assessment.[10] That exclusion would not include small manufacturers because as previously noted they are not subject to the provisions of §§ 150.300 to 150.370 and hence are not subject to special statutory provisions specifying reporting and assess-

9. The history of the manufacturers' license tax in Missouri is consistent with the conclusion we reach. Such a tax was first adopted in 1877. Laws 1877, pp. 293–4. That statute provided for assessment on the basis of such property owned on August first but the law was amended in 1879 to provide for assessment on the basis of the highest amount on hand between the first Monday in March and the first Monday in June. Laws 1879, p. 140. That method of assessment continued thereafter (although the dates were changed eventually to the first Monday in January and the first Monday in April). Apparently in the long period since 1879 it has never been contended previously (at least not in a reported case) that such method of assessment constituted classification for tax purposes contrary to art. X, § 4 of the 1875 Constitution. Furthermore, in the extensive debates concerning classification in the convention which drafted the 1945 Constitution, we find no contention that Missouri already had some classification of property for tax purposes as a result of the manufacturers

license tax (and the similar merchants tax which had been in existence even longer than the manufacturers tax). The constitutional debates disclose that the committee on taxation spent an estimated four weeks in its study of classification for purposes of taxation as contrasted with the then existing system but we find nothing to indicate that during that extensive study the long-standing manufacturers and merchants taxes were viewed as constituting classification for purposes of taxation. Apparently, it has been treated during this long period as a statute providing only a different procedure for assessment.

10. This court recognized in *Mesker Brothers Industries, Inc. v. Leachman*, 529 S.W.2d 153 (Mo.1975) that the manufacturers' tax (and the merchants' tax) is intended to be a substitute for the personal property tax otherwise imposed on such tangible property. In so stating the court called attention to § 137.340.

ment. Section 150.310.3 specifically so provides.

We hold that the manufacturers' license tax statute (§§ 150.300 to 150.370) does not violate Mo.Const., art. X, § 4(a). Accordingly, the judgment is reversed and the case is remanded with directions to enter judgment in accordance with the views herein expressed and to authorize the collector to disburse the impounded tax payments to the agencies entitled thereto.

BARDGETT, C. J., and SEILER and HIGGINS, JJ., concur.

WELLIVER, J., concurs in separate concurring opinion filed.

RENDLEN and MORGAN, JJ., concur and concur in separate concurring opinion of WELLIVER, J.

DONNELLY, J., not sitting.

WELLIVER, Judge, concurring.

I concur in the principal opinion to the extent that it rejects respondents' argument that §§ 150.300 to 150.370, RSMo 1979, creates an impermissible subclassification of tangible personal property in violation of Mo.Const. art. X, § 4(a).

According to a letter filed in this Court dated January 15, 1980, to supplement the amicus curiae brief of Jackson County, Missouri, as of January 14, 1980, the records of the Jackson County Director of Revenue showed that 946 of 9,132 merchants' and manufacturers' accounts billed in 1979 had been paid under protest. Nearly all of the written protest letters "gave as the reason for the protest the decision of the St. Louis County Circuit Court in the *Metal Form Corp., et al. v. Leachman, et al.*" which held that § 139.031 violates not only Mo.Const. art. X, § 4(a), but also Mo.Const. art. X, § 6. The sums paid under such protests amounted as of January 14, 1980, to the staggering figure of $11,291,055.92 in Jackson County alone. If the statement in the supplement to the amicus brief is true, then the element of protest which the principal opinion found to be missing in these four cases may well have been supplied in the letters of protest

filed in most of the other cases relating to the millions of dollars of presently impounded taxes around the state.

We should not leave for future litigation any question of disbursement of these presently impounded taxes. I agree with the view expressed in footnote 4 of the principal opinion that § 150.310 would be far less subject to criticism with subsection 3 repealed. However, I would hold in this case that § 150.310.3, RSMo 1978, does not violate Mo.Const. art. X, § 6, because the purported exemption in § 150.310.3 neither leaves the property untaxed nor taxes it at a different rate.