**BOYD–RICHARDSON COMPANY,**
**Appellant,**

v.

**George C. LEACHMAN, Collector of**
**Revenue of St. Louis County,**
**Respondent.**

**AMERICAN CYANAMID COMPANY,**
**Appellant,**

v.

**Lester L. PETERS, Collector of Revenue**
**of Marion County, Respondent.**

**ST. LOUIS BANANA AND TOMATO**
**COMPANY, INC., Appellant,**

v.

**Lawrence E. WOODSON et**
**al., Respondent.**

**Nos. 62376, 62581 and 62703.**

Supreme Court of Missouri,
En Banc.

April 6, 1981.
Rehearings Denied May 11, 1981.

Robert G. Brady, Juan D. Keller, St. Louis, for appellants in Nos. 62376, 62581.

Thomas W. Wehrle, County Counselor, Dennis C. Affolter, Assoc. County Counselor, Clayton, for respondent in No. 62376.

R. Jay Ingraham, County Counselor, Michael F. Dandino, Assoc. County Counselor, Kansas City, for amicus curiae Jackson Co.

Warren L. Wells, Pros. Atty., Thomas Peter Danielsons, Asst. Pros. Atty., Hannibal, for respondent in No. 62581.

John L. Sullivan, St. Louis, for appellant in No. 62703.

Thomas A. Connelly, City Counselor, James J. Wilson, Assoc. City Counselor, Edward J. Hanlon, Asst. City Counselor, St. Louis, for respondent in No. 62703.

William E. Buckley, Kenneth C. Brostron, Mark D. Mittleman, St. Louis, for amicus curiae St. Louis City School District.

Donald S. Hilleary, Clayton, for amicus curiae Auto Dealers.

BARDGETT, Chief Justice.

The Court consolidated the appeals of three cases in which plaintiffs-appellants Boyd-Richardson, American Cyanamid Company and St. Louis Banana & Tomato Company, Inc., seek recovery of merchants' and manufacturers' license taxes for 1979 after paying those taxes under protest. The taxes paid by Boyd-Richardson and American Cyanamid were assessed pursuant to Chapter 150 of the Missouri statutes. On the taxable dates in 1979 § 150.040, pertaining to merchants, required that merchants be licensed and taxed on the greatest amount of goods, wares and merchandise on hand at any one time between the first Monday in January and the first Mon-

day in April,[1] with the ad valorem tax so imposed to be equal to that imposed on real estate. § 150.040 RSMo 1978. Section 150.320 similarly taxes manufacturers on raw materials, finished products, tools, machinery and appliances on hand during the same period. The taxes paid by St. Louis Banana & Tomato additionally involve § 92.040 and §§ 92.041—92.047 which authorize cities having a population of over 300,000 and cities having a population of over 650,000, respectively, to levy for *local* purposes a less ad valorem rate than the rate on real estate. In both the action by Boyd-Richardson and the action by American Cyanamid the trial courts sustained respondents' motions to dismiss. In St. Louis Banana and Tomato Co., Inc. v. Woodson the circuit court for the City of St. Louis ruled that the statutory scheme for the taxation of merchants and manufacturers did not violate Art. X, § 3, 4(a) or 6 of the Missouri Constitution and entered judgment for respondent Woodson. Plaintiffs in all three actions have appealed. This Court has jurisdiction because construction of the revenue laws of the state is involved. Mo. Const., Art. V, § 3. The judgments are affirmed.

Boyd-Richardson is a Missouri corporation engaged in selling clothing and accessories for men and women at retail prices from various locations in St. Louis County. Taxes paid to the county on its 1979 assessed valuation were $56,994.98. American Cyanamid Company, a manufacturer engaged in the production of chemicals, paid taxes of $292,773.89 for 1979 to the Marion County collector. St. Louis Banana is a wholesale produce dealer in the City of St. Louis. Its 1979 merchants tax and license fee amounted to $7,342.60. All three plaintiffs purportedly paid their 1979 taxes under protest, and consequently the agencies for whose use the tax was assessed—school districts, counties, etc., have not had the use of this money.

---

1. Amended effective September 28, 1979, so as to fix the taxable date as January 1 of each year beginning January 1, 1980.

Section 139.031 RSMo 1978,[2] authorizes the payment of taxes, other than taxes collected by the Director of Revenue of Missouri, to be made under protest. It requires the protest to be made in writing at time of payment and that the protest letter set forth the ground on which the protest is based and further cite any law, statute or facts on which the taxpayer relies. Boyd-Richardson cited §§ 3, 4(a), 4(b), and 6 of Art. X of the state constitution in its protest letter, and in addition noted the circuit court decision in *Metal Form*. American Cyanamid, in its protest, asserted no constitutional or statutory provision, but instead cited only the then pending *Metal Form* case saying that if the state loses its appeal in *Metal Form v. Leachman*, American Cyanamid will seek a refund of these taxes.[3] Plaintiff St. Louis Banana and Tomato Company based its protest on Art. X, §§ 4(a) and 6.

■ The state prevailed in *Metal Form Corporation v. Leachman*, 599 S.W.2d 922 (Mo.banc 1980), decided February 22, 1980. The Court held that it would enforce the explicitly stated statutory requirement of specificity in these tax protest actions. Thus, the Court refused to consider claims set out in plaintiff's amended petition which did not appear in their protest letter. The reasoning in *Metal Form*, supra, bears restating, l. c. 925:

> "Payment of taxes under protest requires that those funds be impounded by the collector until the protest is resolved. The various agencies (counties, cities, school districts, library districts, etc.) to which such taxes are to be distributed for use in their current operations are denied those funds during that time. The effect on such agencies, where, as here, very

substantial sums are paid under protest, can inhibit their ability to pay necessary expenses and hence be very detrimental. Therefore, it is important, as the legislature recognized, that payment under protest be on the basis of a then perceived specific entitlement to relief, and not on the basis of a general claim which taxpayer hopes he may substantiate later by finding some justification and authority. Accordingly, we limit our consideration to the alleged violation of art. X, § 4(a) asserted in the letter of protest which accompanied the tax payments. We do not reach or consider in this case the claim of plaintiffs that the manufactures' tax statutes violate the uniformity requirement of art. X, § 3 or the claim that the exclusion of small manufacturers under the provisions of § 150.310.3 violates art. X, § 6 by granting an unauthorized exemption."

Here the sum paid by American Cyanamid to the Marion County collector but impounded since December 20, 1979, pursuant to § 139.031 is $292,773.89. Under this protest payment statute the taxpayer, having paid the sum to the collector, is not liable for interest or penalties during the impoundment even though he fails in his protest and even though the schools, etc., cannot use the tax money in the interim. In short, the taxpayer is afforded the privilege of contesting the tax without being liable for penalties should he lose the contest. This was a change over the prior practice. See *American Airlines v. City of St. Louis*, 368 S.W.2d 161 (Mo.1963), and *Stein v. State Tax Commission*, 379 S.W.2d 495 (Mo. 1964).

■ A protest made dependent on the eventual outcome of another lawsuit does

---

**2.** Section 139.031 states, in pertinent part, "Any such taxpayer desiring to pay any taxes under protest shall, at the time of paying such taxes, file with the collector a written statement setting forth the grounds on which his protest is based, and shall further cite any law, statute, or facts on which he relies in protesting the whole or any part of such taxes."

**3.** In pertinent part the letter stated: "Also, as discussed with Mr. Savino, *please be advised*

*that pursuant to SECTION 139.031 of the Missouri Revised Statues* [sic] *we hereby protest the payment of the Merchants Advalorem Tax.* Should the State of Missouri lose its appeal with the *Metal Form Corporation versus George C. Leachman, et al,* case, we will seek a refund for those taxes paid for the Merchants Advalorem Tax on the grounds that the tax is unconstitutional."

not state a "then perceived specific entitlement to relief." [4] The letter stated no other specific grounds. The protest letter of American Cyanamid was, therefore, wholly insufficient under § 139.031, *Metal Form, Inc. v. Leachman,* supra. Count I of American Cyanamid's petition in circuit court was filed pursuant to § 139.031, and dismissed on motion of the collector.

But Cyanamid asserts its protest letter should be given a "liberal construction" as the court would do when testing the sufficiency of ordinary pleadings. The taxes paid under protest are impounded *upon payment* when the *protest letter,* not the pleadings, complies with § 139.031. The filing of ordinary lawsuits do not have the drastic effect of forestalling the use of money by the defendant, but under § 139.031 the agencies for whose benefit the tax is collected are prohibited from its use for what can be a substantial period of time. The statute, § 139.031, justifiably requires specificity in these circumstances and the Court will enforce that requirement. These taxes are assessed *by the year* and are intended for use during *that year.* To expand the protest payment benefit beyond the statutory authorization would increase the disruption of the yearly collection and disbursement system and the functioning of necessary public agencies.[5]

The trial courts dismissal of Count I of American Cyanamid's petition was correct and is affirmed.

Count II of Cyanamid's petition reasserts the allegations of Count I and prays for the same relief. This count, Cyanamid argues, is an equitable cause of action which remains available to the taxpayer, as it has existed for decades in Missouri, and that the protest action under § 139.031 is not the exclusive remedy to contest a tax. In support of this argument Cyanamid cites *John Calvin Manor v. Alyward,* 517 S.W.2d 59 (Mo.1974), and *McGraw-Edison v. Curry,* 485 S.W.2d 175 (Mo.App.1972).

In *John Calvin Manor* and *McGraw-Edison* the Court held that where the assessor fails to comply with the statutory requirement that he inform the taxpayer of an increase in assessed valuation and thereby precludes the taxpayer from utilizing his administrative remedies (because taxpayer has not been informed of the increase) the court will not penalize the taxpayer for failure to exhaust those remedies. *John Calvin Manor* arose after passage of § 139.031 and was an injunction suit to prevent the collector from collecting the tax. The tax had not been paid and the suit was instituted prior to the date upon which the tax would become delinquent. *McGraw-Edison,* supra, arose prior to § 139.031 but the taxpayer paid the taxes "under protest" and then sued seeking a declaration of overpayment and a judgment for a refund. As noted, in both cases the taxpayer was precluded from pursuing the administrative remedies by the assessor's failure to give the required notice of increase. The real issue in both cases was whether the taxpayer was excused from exhausting his administrative remedies. The court held the taxpayer was so excused and proceeded to adjudicate the cases and granted the relief necessitated by the circumstances.

In *John Calvin Manor* there was no occasion to decide whether the taxpayer, not having paid the tax, was liable for interest and penalties because it was held the increased tax was not owed. A fortiori—had the case gone against the taxpayer, interest and penalties would have been due in addition to the tax. See *American Airlines v. City of St. Louis,* 368 S.W.2d 161, 167 (Mo. 1963); *Stein v. State Tax Commission,* 379 S.W.2d 495 (Mo.1964).

---

4. For these same reasons we note that the reference to the *Metal Form* case contained in Boyd-Richardson's letter is of no effect in protesting its taxes. Therefore, this plaintiff must rely on its other grounds cited in the letter to effect its protest.

5. In *Metal Form* at l. c. 929 it was pointed out that as of January 14, 1980, there was "the staggering figure of $11,291,055.92" impounded as having been paid under protest in Jackson County alone. Most of this had been intended for school district use. It is difficult to believe the legislature intended for taxpayers to be able to prevent the use of all of their tax money by the simple stroke of a pen—paying under protest—but that is what is taking place.

And in *McGraw-Edison v. Curry*, supra, the court, after deciding the substantive issues in favor of the taxpayer, ordered a refund *as a discretionary* matter.

In its reply brief, Cyanamid asserts for the first time that the statutory remedy is inadequate because § 139.031 provides that no interest is to be paid to a taxpayer who has paid under protest and prevailed. Cyanamid cites the Seventh Circuit Court of Appeals case of *Rosewell v. LaSalle National Bank*, 604 F.2d 530 (7th Cir. 1979) reversed —— U.S. ——, 101 S.Ct. 263, 66 L.Ed.2d 126 (1981), for the proposition that the failure of the state to pay interest on money paid in under protest makes the state remedy *per se* inadequate. Since the submission of Cyanamid's cause to the Missouri Supreme Court the United States Supreme Court has handed down an opinion in the *Rosewell* case. The United States Supreme Court held that the Seventh Circuit's holding that the Tax Injunction Act did not bar federal district court jurisdiction because Illinois' procedure of no-interest refunds after two years was not "a plain, speedy and efficient remedy" was in error, and reversed the holding by that court. The validity of any statement made in the Seventh Circuit's *Rosewell* opinion as to the necessity of interest payments is therefore left in doubt. What this Court does note is that in *Rosewell* the United States Supreme Court found that the Illinois tax protest procedure, which appears similar to that used in Missouri, was a "plain, speedy and efficient remedy" and thus the federal district court was precluded from enjoining, suspending or restraining the collection of the Illinois tax based on 28 U.S.C. § 1341. The point is overruled.

■ Note, however, that in Missouri the taxpayer is entitled to receive the interest earned on the sum paid under protest, if the taxpayer prevails. *Southwestern Bell Tel. Co. v. Feuerstein*, 529 S.W.2d 371 (Mo.1975). Actually, the point is a moot matter here because the taxpayers in these appeals do not prevail on the merits.

■ Cyanamid is not in a position similar to *John Calvin Manor* or *McGraw-Edison*. Cyanamid had the opportunity to and did pay the taxes under protest and did file a statement, albeit ineffectual, of protest. This suit is pursuant to that protest payment and the case is, in practically all procedural respects, similar to *Metal Form Corp. v. Leachman*, 599 S.W.2d 922 (Mo. banc 1980), insofar as the attempt to broaden the issues beyond the protest statement is concerned. Separating the suit into two counts, as here, or proceeding in one count, as in *Metal Form*, ought not to vary the legal result in a case essentially brought under § 139.031. This does not foreclose efforts to bring other actions contesting the validity of a taxing statute but it does restrict a refund action brought under § 139.031 to the issues raised in the protest letter. *Metal Form v. Leachman*, supra.

The circuit court order dismissing Count II in *American Cyanamid v. Peters* was correct and is affirmed. The judgment in No. 62581 is affirmed.[6]

What we must now consider are the arguments presented by Boyd-Richardson and St. Louis Banana and Tomato Company challenging the constitutionality of the merchants' and manufacturers' taxes.

## ARTICLE X, § 3, UNIFORMITY CHALLENGE

■ Boyd-Richardson argues that § 150.-040 and § 150.310 violate the uniformity clause of Art. X, § 3 of the Missouri Constitution. Appellant's argument is as follows: Property taxed under Chapter 150 and tangible personal property as defined and taxed in Chapter 137 of the Revised Statutes of Missouri are one class of property within the meaning of Art. X, § 4(a) of the constitution. Art. X, § 3 thus requires that these two classes be taxed uniformly. Chapters 92, 150 and 137 do not so tax uniformly, thus the Chapter 150 system of taxation violates the uniformity require-

---

**6.** The issues raised in Count II of 62581 are also raised in one or both of the other two cases and will be adjudicated there. Nevertheless, the judgment in 62581 must be affirmed under *Metal Form*, supra.

ment of Art. X, § 3. Boyd-Richardson's argument that Chapters 92, 150 and 137 do not uniformly tax property which falls under them revolves around alleged differences in the method of identifying the property, in valuation of it and in its assessment.

In *Metal Form Corp. v. Leachman, supra,* the Court held that the different treatment prescribed for merchants and manufacturers with respect to time of assessment under § 150.040 and § 150.310 results in no difference in taxation, but only in the method of assessment of the tax. Chapter 150 neither calls for, nor results in, taxation of property subject to its provisions at different rates than tangible personal property taxed under the provisions of Chapter 137. Neither does Chapter 150 require the application of different percentages of valuation than Chapter 137. *Metal Form Corp. v. Leachman, supra,* at 927. The differing identification procedures of § 150.040 and § 150.310 thus do not violate the uniformity clause of Art. X, § 3. The point is overruled.

### CHALLENGE TO CONSTITUTIONALITY OF §§ 92.040—92.047

■ Plaintiffs Boyd-Richardson and St. Louis Banana challenge the constitutionality of § 92.040—§ 92.047. Specifically, Boyd-Richardson argues that failure to reduce the ad valorem tax rate in St. Louis County in the same manner as §§ 92.040—92.047 authorizes reduction by the City of St. Louis and Kansas City violates Art. X, § 3 (requiring uniformity) and § 4(b) (requiring assessment at value or percentage of value as may be fixed by law for each class and for each subclass of class 2), of the Constitution of Missouri. St. Louis Banana, for its part, asserts that § 92.040 does not, by its terms, authorize the imposition of a merchants' tax and §§ 92.041—92.047 are inapplicable to the City of St. Louis in that its population is less than 650,000.

Boyd-Richardson's argument on this point does not directly challenge the constitutionality of § 150.040, under which it is taxed, but rather challenges § 150.040 on the grounds that § 92.040 violates Missouri Con-

stitution Art. X, §§ 3 and 4(b). Boyd-Richardson, however, did not indicate reliance on § 92.040 in its protest letter. While one can reasonably infer that Boyd-Richardson's protest was addressed to §§ 150.050 and 150.310, the statutes which levied the tax but which were not cited in its protest letter, such an inference is not warranted as to statutes which are not prima facie involved. Thus the Court will not consider Boyd-Richardson's claim on this point.

■ St. Louis Banana argues that § 92.-040 does not authorize imposition of the merchants' tax. Section 92.040 provides in part: "All cities in this state having a population of over three hundred thousand inhabitants are authorized to levy for local purposes a less ad valorem rate of taxation than that levied by them on real estate or other property for the same purpose, . . . ." The statute clearly authorizes the tax. The point is overruled.

■ Next St. Louis Banana argues that §§ 92.041—92.047 are inapplicable to the City of St. Louis because its population is presently less than 650,000. In *State ex rel. McNeal v. Roach,* 520 S.W.2d 69 (Mo.banc 1975), the Court held that § 1.100, passed by the general assembly in 1971, indicated the intent of the general assembly that a decrease in population shall not affect the applicability of laws a city not within a county has already qualified under. It was noted in *Roach* that § 1.100 was clearly enacted for the purpose of continuing the scheme of statutory application for which the City of St. Louis had previously qualified. *See State ex rel. McClellan v. Godfrey,* 519 S.W.2d 4 (Mo.banc 1975) in which judicial notice was taken of the fact that St. Louis is the only city "not located in a county." The issue not addressed in either *Roach* or *Godfrey* but which is alleged here by St. Louis Banana is whether § 1.100 constitutes special legislation in violation of Art. III, § 40(30). The Court holds that § 1.100 does not constitute special legislation within the meaning of Art. III, § 40. St. Louis is given specific recognition in Art. VI, § 31, of the Constitution of Missouri as being *sui generis,* a unique entity in a

unique class. Legislation enacted to address the class of which St. Louis is the only member is therefore not special legislation within the meaning of Art. III, § 40.

 Nor is § 1.100 violative of Art. III, § 28 of the Constitution of Missouri. Section 28 provides that "No act shall be amended by providing that words be stricken out or inserted, but the words to be stricken out, or the words to be inserted, or the words to be stricken out and those inserted in lieu thereof, together with the act or section amended, shall be set forth in full as amended." Appellant St. Louis Banana argues that the Art. III, § 28 as applied in *State ex rel. McNary v. Stussie,* 518 S.W.2d 630 (Mo.banc 1974), requires that § 1.100 be declared invalid. *Stussie* is distinguishable from the present case. In *Stussie,* § 494.010 (Senate Bill 438) was enacted as follows:

"3. After the effective date of this act, a minor is a person who has not attained the age of eighteen years and whenever the term 'twenty-one years of age' is used as a limiting or qualifying factor it shall be deemed to mean 'eighteen years of age', and the revisor of statutes is hereby authorized to make the appropriate changes in the Revised Statutes of Missouri as they are revised, reenacted or reprinted."

The statute called for words to be stricken out and others to be substituted in contradiction to the prohibition in Art. III, § 28. However in the present case the act does not substitute one phrase for any other in a pre-existing statute. Section 1.100 is a unified whole. The fact that it has consequences for other statutes does not bring it into conflict with Art. III, § 28. The point is overruled.

ART. X, § 6 CHALLENGE TO § 150.310.3
RSMo 1978

 Boyd-Richardson next asserts that the small manufacturers' exemption contained in § 150.310.3 violates Art. X, § 6 of the Constitution of Missouri. Art. X, § 6 states in pertinent part, "All laws exempting from taxation property other than the property enumerated in this Article, shall be void." Section 150.310.3 does not allow the specified property to go untaxed. The small manufacturer would still be assessed in accordance with Chapter 137 procedures. Neither does § 150.310.3 tax the property at a different rate, since by the terms of § 92.043 the rate applies to the entire subclass of § 92.041 property. Hence § 150.-310.3 does not violate § 6 of Art. X. *Metal Form v. Leachman, supra,* l. c. 927. The point is overruled.

The judgments in all three cases are affirmed.

RENDLEN, SEILER, WELLIVER, MORGAN, HIGGINS, JJ., and STOCKARD, Special Judge, concur.

DONNELLY, J., not sitting.