962 F.2d 762
 74 Ed. Law Rep. 1059
 Kalima JENKINS, by her next friend, Kamau AGYEI; Carolyn
Dawson, by her next friend Richard Dawson; Tufanza A. Byrd,
by her next friend Teresa Byrd; Derek A. Dydell, by his
next friend Maurice Dydell; Terrance Cason, by his next
friend Antoria Cason; Jonathan Wiggins, by his next friend
Rosemary Jacobs Love; Kirk Allan Ward, by his next friend
Mary Ward; Robert M. Hall, by his next friend Denise Hall;
Dwayne A. Turrentine, by his next friend Shelia Turrentine;
Gregory A. Pugh, by his next friend David Winters; on
behalf of themselves and all others similarly situated;
Plaintiffs-Appellees,
American Federation of Teachers, Local 691, Intervenor-Appellee,
v.
STATE OF MISSOURI; John Ashcroft, Governor of the State of
Missouri; Wendell Bailey, Treasurer of the State of
Missouri; Missouri State Board of Education; Roseann
Bentley, Member of the Missouri State Board of Education;
Dan L. Blackwell, Member of the Missouri State Board of
Education; Raymond McCallister, Jr., Member of the Missouri
State Board of Education; Susan D. Finke, Member of the
Missouri State Board of Education; Thomas R. Davis,
presiding President, Member of the Missouri State Board of
Education; Cynthia B. Thompson, Member of the Missouri
State Board of Education; Robert E. Bartman, Commissioner
of Education of the State of Missouri; Gary D. Cunningham,
Member of the Missouri State Board of Education; Rebecca M.
Cook, Member of the Missouri State Board of Education;
School District of Kansas City, Missouri; Claude C.
Perkins, Superintendent thereof; Defendants-Appellees,
Icelean Clark; Bobby Anderton; Eleanor Graham; John C.
Howard; Craig Martin; Gay D. Williams; Kansas City Mantel
& Tile Co.; Coulas and Griffin Insurance Agency, Inc.;
Lucille Trimble; Berlau Paper House, Inc.; Andrew J.
Winningham, Intervenors-Appellants.
 No. 90-2977.
 United States Court of Appeals, Eighth Circuit.
 Submitted June 25, 1991.
Decided April 10, 1992.
 
 Mark J. Bredemeier, Kansas City, Mo., argued (Jerald L. Hill and Richard P. Hutchison, on brief), for appellant.
 Bart A. Matanic, Jefferson City, Mo., argued (Michael J. Fields, on brief), for appellee.
 Patricia A. Brannan, Washington, D.C., argued (Arthur A. Benson, II, and Dianne Moritz, Kansas City, Mo., David S. Tatel, Allen R. Snyder and Daniel B. Kohrman, Washington, D.C., Michael Thompson, Kansas City, Mo., on brief), for School Dist. of Kansas City, Mo.
 Before McMILLIAN, Circuit Judge, HEANEY, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.
 JOHN R. GIBSON, Circuit Judge.
 
 
 1
 This case presents two issues as to whether property owners whose real estate taxes were affected by various orders in the Kansas City, Missouri, school desegregation case may obtain refunds of taxes they paid. The first issue concerns property owners who paid 1987 taxes under the levy directly set by the district court, see Jenkins v. Missouri, 672 F.Supp. 400, 412-13 (W.D.Mo.1987), and who did not follow the Missouri protest statute, Mo.Rev.Stat. § 139.031. The Supreme Court reversed the judicial tax levy in Missouri v. Jenkins, 495 U.S. 33, 110 S.Ct. 1651, 109 L.Ed.2d 31 (1990), and the district court ordered the refund of 1987 taxes paid under protest. Order of Oct. 29, 1990, slip op. at 1. We now consider the claims of those taxpayers who did not protest, but nevertheless seek a refund. The second issue concerns the validity of 1988 taxes paid under a levy the school board set pursuant to our decision in Jenkins v. Missouri, 855 F.2d 1295 (8th Cir.1988) (Jenkins II ), but before our mandate issued in that case. The district court denied all claims for refund as to 1988 taxes. Order of Oct. 29, 1990, slip op. at 1-2. On appeal the intervenors[1] argue that even the 1987 payments not paid under protest should be refunded because the protest statute did not apply to such payments, and because fundamental principles of due process and just compensation mandate a full refund. The taxpayers also question whether the school board could legitimately set the 1988 tax before our mandate issued. We affirm the judgment of the district court.[2]
 
 
 2
 In its order of September 15, 1987, the district court ordered an extensive desegregation remedy, including a magnet plan and capital improvements programs, and ordered the property tax levy to be increased $1.95 over the existing levy, to $4.00 per $100.00 assessed valuation. 672 F.Supp. at 413. The real estate taxes for 1987 were levied under this order and billed to the taxpayers. Payment was due December 31, 1987. Some 9,000 Kansas City, Missouri School District (KCMSD) taxpayers paid their taxes under protest pursuant to Mo.Rev.Stat. § 139.031.[3] The protested payments amounted to a total of $10,695,197. As prescribed in the statute these funds were escrowed and the taxpayers, represented by Landmark Legal Foundation (also counsel for intervenors in this case), instituted state court refund actions. Payments amounting to $23,140,758 were made by other taxpayers without the filing of protests.
 
 
 3
 In Jenkins II, decided August 19, 1988, we affirmed the district court's order setting the 1987 levy, 855 F.2d at 1314, but we prescribed a different procedure for future funding requirements. Id. We stated that the school board should be authorized to submit a proposed levy to collection authorities adequate to fund its budget, and that county and state authorities should then be enjoined from applying Missouri constitutional and statutory limitations that would limit or reduce the levy below the amount the school board submitted. Id. The amount of the levy was to be subject to reasonable limitations to be set by the district court. Id. The Supreme Court granted certiorari to review the taxation orders, and in Missouri v. Jenkins, 495 U.S. 33, 110 S.Ct. 1651, 109 L.Ed.2d 31 decided April 18, 1990, the Court held that the district court's order levying the tax was beyond its powers and unlawful, but affirmed the future funding formula this court set out in Jenkins II. 110 S.Ct. at 1662-63, 1666.
 
 
 4
 On September 13, 1988, a little less than a month after we filed our Jenkins II opinion, the Kansas City school board authorized counsel to move the district court to approve a property tax levy of $4.23. At the same time the board resolved that if the district court did not rule on the motion by October 11, 1988, the County's deadline for certifying the levy, the board "anticipates that at that time it will set the 1988-89 levy rate at $4.00 ... pursuant to Judge Clark's September 15, 1987 ruling." KCMSD attorneys filed the motion, but the district court did not rule on the motion by October 11, 1988, because this court's mandate had not issued. Consequently, on October 11, 1988, the Board voted to set the 1988 levy at $4.00 pursuant to the district court's September 15, 1987, ruling. This court's mandate issued October 14, 1988, after we denied motions for rehearing. On January 3, 1989, the district court denied KCMSD's motion to set the 1988 maximum levy at $4.23 and held that it should not be increased from $4.00.[4]
 
 
 5
 The Clark Group then moved to intervene and the district court allowed the intervention "for the limited purpose of seeking a ... full refund of the Court-ordered property tax." Order of Oct. 29, 1990, slip op. at 1. The district court held that the 1987 taxes paid under protest should be refunded, but denied refund of any of the rest of the real estate taxes. Id. at 1-2.
 
 
 6
 The district court rejected the claim that 1987 taxes paid without protest should be refunded. It held that under Missouri law taxes once paid can only be recovered through compliance with the protest statute. Id. at 5-6. Relying on McKesson Corporation v. Division of Alcoholic Beverages and Tobacco, 496 U.S. 18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990), the district court rejected the intervenors' constitutional claims because the protest procedure was available. Slip op. at 7.
 
 
 7
 With respect to the 1988 property taxes, the district court held that in its September 13 and October 11, 1988, actions the KCMSD school board had followed the modified procedure approved by this court and ultimately affirmed by the Supreme Court. Slip op. at 10. The district court's January 3, 1989, order tacitly approved as reasonable the school board's October 11, 1988, action. Order of Oct. 29, 1990, slip op. at 10-11; see Order of Jan. 3, 1989, slip op. at 6. It rejected the intervenors' argument that any actions the board took before our mandate had issued were based on the court-ordered levy that the Supreme Court eventually reversed. While the delay in issuing the mandate prevented the district court from taking action, it did not prevent the KCMSD board from setting its own levy at the same rate previously approved by the district court. Id. at 12. Moreover, at the time the taxes were paid, our mandate modifying the district court order was in effect. Id. The district court held that the protested funds collected under the 1987 tax levy should be refunded to the protesting taxpayers, and that the escrowed tax payments for 1988 and 1989 should be paid to the State to satisfy certain obligations between the State and KCMSD under earlier orders of the court. Id. at 16.
 
 I.
 
 8
 In attacking the district court's refusal to order refund of unprotested 1987 taxes, the intervenors argue that the judicial levy of 1987 taxes was an unlawful taking of taxpayers' property implicating Fifth and Fourteenth Amendment just compensation and due process rights. They claim that the Constitution requires refund of the payments not made under protest as well as those made under the statutory protest procedure. The intervenors also argue that Mo.Rev.Stat. § 139.031 does not apply to the type of taxes involved here, but that if the district court considered it applicable it should have notified taxpayers of the need to make payments under protest.
 
 
 9
 We reject the intervenors' argument that the state refund procedure does not apply to taxes levied by a federal court. Section 139.031 refers broadly to "any taxes." The intervenors contend that the statute can only apply to taxes levied by state authority, but we do not see the origin of the levy as the crucial issue. While the district court did order the levy increase, the levy was nevertheless in all other ways treated as an ordinary state property tax. The district court did not purport to be creating a new type of tax, but merely augmenting the existing KCMSD property tax. 672 F.Supp. at 413. It was billed by the county tax authorities and paid to those authorities for the benefit of the state school district. In fact, the intervenors' brief refers to the levy several times as a "property tax."
 
 
 10
 As the district court correctly observed, the protest procedures of section 139.031 have been applied to a variety of taxes. See, e.g., Boyd-Richardson Co. v. Leachman, 615 S.W.2d 46 (Mo.1981) (en banc) (merchants' and manufacturers' license taxes collected under unconstitutional statute); B & D Investment Co. v. Schneider, 646 S.W.2d 759, 760 (Mo.1983) (en banc) (invalid property tax). Missouri courts have held that "[a] taxpayer's failure to follow the mandate of [section 139.031.1] has consistently been held to bar his claim of impropriety of any part of the taxes he has paid ... unless such a refund is expressly authorized by another statutory provision." Buck v. Leggett, 813 S.W.2d 872, 877 (Mo.1991) (en banc). The intervenors do not argue that any other statute entitles them to a refund. Thus, even though this tax did not originate under state law, we conclude that it would be subject to the protest requirement.
 
 
 11
 We also reject the intervenors' argument that requiring compliance with the protest procedures violated due process. The district court relied on McKesson in holding there was no due process deprivation. Order of Oct. 29, 1990, slip op. at 7. In McKesson, the Supreme Court held a certain Florida tax law unconstitutional. However, Florida's tax procedures did not provide a method by which the taxes could be refunded. The Court held that:
 
 
 12
 [I]f a State penalizes taxpayers for failure to remit their taxes in a timely fashion, thus requiring them to pay first and obtain review of the tax's validity later in a refund action, the Due Process Clause requires the State to afford taxpayers a meaningful opportunity to secure postpayment relief for taxes already paid pursuant to a tax scheme ultimately found unconstitutional.
 
 
 13
 110 S.Ct. at 2242. Yet McKesson discussed in detail the procedural safeguards that would at once protect the State's interests in orderly tax collection and the taxpayers' due process rights:
 
 
 14
 A State's freedom to impose various procedural requirements on actions for postdeprivation relief sufficiently meets this concern with respect to future cases. The State might, for example, provide by statute that refunds will be available only to those taxpayers paying under protest or providing some other timely notice of complaint; execute any refunds on a reasonable installment basis; enforce relatively short statutes of limitation applicable to such actions; refrain from collecting taxes pursuant to a scheme that has been declared invalid by a court or other competent tribunal pending further review of such declaration on appeal; and/or place challenged tax payments into an escrow account or employ other accounting devices such that the State can predict with greater accuracy the availability of undisputed treasury funds. The State's ability in the future to invoke such procedural protections suffices to secure the State's interest in stable fiscal planning when weighed against its constitutional obligation to provide relief for an unlawful tax.
 
 
 15
 110 S.Ct. at 2254-55 (footnote omitted) (emphasis added). McKesson thus specifically approves the protest and escrow procedures that are at the heart of section 139.031.
 
 
 16
 The intervenors also argue that they did not have notice that the protest procedure would apply. The Supreme Court has made clear that "[a]ll persons are charged with knowledge of the provisions of statutes and must take note of the procedure adopted by them." Texaco, Inc. v. Short, 454 U.S. 516, 532 n. 25, 102 S.Ct. 781, 793 n. 25, 70 L.Ed.2d 738 (1982) (quoting North Laramie Land Co. v. Hoffman, 268 U.S. 276, 283, 45 S.Ct. 491, 494, 69 L.Ed. 953 (1925)); Ross v. Martin, 800 F.2d 808, 811 (8th Cir.1986) (holding taxpayers were presumed to have notice of similar Arkansas tax protest law). Moreover, the intervenors admit that their counsel, Landmark Legal Foundation, publicized the availability of the protest process before the 1987 tax was collected and indeed, held several press conferences on the subject.
 
 
 17
 Insofar as the intervenors assert a claim of a taking without just compensation, the issue is raised for the first time on appeal, and we do not consider such issues. Singleton v. Wulff, 428 U.S. 106, 120, 96 S.Ct. 2868, 2876, 49 L.Ed.2d 826 (1976); Westcott v. City of Omaha, 901 F.2d 1486, 1490 (8th Cir.1990).
 
 II.
 
 18
 Intervenors argue that the district court erred in denying refunds of the 1988 property taxes (whether or not paid under protest). They argue that in order to make a valid levy the district court had to reverse its previous order, set a permissible maximum, and let the school board levy the tax. This the district court was not able to do because our mandate did not issue until October 14, 1988, three days after the taxes for the year had to be levied. Therefore, intervenors argue, the district court had no jurisdiction to take the necessary steps to result in a permissible levy. They also argue that the Supreme Court decision, 110 S.Ct. at 1664 n. 18, held that 1988 as well as 1987 taxes were collected under the invalid judicial levy.
 
 
 19
 We are not persuaded by the intervenors' attacks on the 1988 tax. The district court was correct in relying on the fact that "[t]he Board itself set the 1988 levy on October 11, 1988." Slip op. at 12. It is not important that the board acted three days before our mandate issued. While the district court had no jurisdiction to act in accord with our August 19, 1988, opinion before receiving this court's mandate, there was nothing to prevent the board from taking action.
 
 
 20
 We also reject the intervenors' argument that the procedures we mandated for future levies were not followed in that the district court did not give prior approval to a reasonable limit for the 1988 levy. The levy set on October 11, 1988, was the same amount that the court had set for 1987 (which obviously it had approved), and the court order of January 3, 1989, "tacitly approved as reasonable the Board's action at its October 11, 1988 meeting to set the levy at $4.00." Order of Oct. 29, 1990, slip op. at 10-11. Moreover, since our mandate issued three days after the board's October 11 resolution, by the time the billing and collection took place, this court's decision as to future taxing procedures was fully effectuated by issuance of its mandate. The district court did not err in holding: "The taxes were collected lawfully in accordance with the Eighth Circuit's modified procedure." Slip op. at 12.
 
 
 21
 The arguments the intervenors assert with respect to the Supreme Court's decision are simply not supported by the language the court used in its opinion.
 
 III.
 
 22
 We affirm the judgment of the district court that refunds may be made of property taxes only for the year 1987 and only for taxes that were paid under the protest procedures of Mo.Rev.Stat. § 139.031.
 
 
 
 [1]
 The district court allowed a group of taxpayers to intervene for purposes of seeking refund of these real estate taxes. The intervenors were: Icelean Clark, Bobby Anderton, Eleanor Graham, John C. Howard, Craig Martin, Gay D. Williams, Kansas City Mantel & Tile Company, Coulas & Griffin Insurance Agency, Inc., Lucille Trimble, Berlau Paper House, Inc., and Andrew J. Winningham (hereinafter the Clark Group)
 
 
 [2]
 The Honorable Russell G. Clark, Senior United States District Judge for the Western District of Missouri
 
 
 [3]
 Mo.Rev.Stat. § 139.031 (1987 Supp.) (amended in 1989) provided in part:
 
 
 [1]
 Any taxpayer may protest all or any part of any taxes assessed against him, except taxes collected by the director of revenue of Missouri. Any such taxpayer desiring to pay any taxes under protest shall, at the time of paying such taxes, file with the collector a written statement setting forth the grounds on which his protest is based
 
 
 [2]
 The collector shall disburse to the proper official all portions of taxes not disputed by the taxpayer and shall impound in a separate fund all portions of such taxes which are in dispute. Except as provided in subsection 3 of this section, every taxpayer protesting the payment of taxes shall, within ninety days after filing his protest, commence an action against the collector by filing a petition for the recovery of the amount protested in the circuit court of the county in which the collector maintains his office
 
 
 [4]
 The 1988 taxes had been billed and would have been delinquent if not paid on or before December 31, 1988. Ten thousand taxpayers paid approximately $9,379,400 of the 1988 taxes under protest pursuant to Mo.Rev.Stat. § 139.031