**VILLAGE NORTH, INC.,**
**Plaintiff–Respondent,**

v.

**STATE TAX COMMISSION OF MISSOURI, et al.,**
**Defendants–Appellants.**

**No. 57689.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Nov. 13, 1990.

John Ford Cowling, Ann Elizabeth Buckley, St. Louis, for defendants-appellants.

Dennis C. Affolter, Clayton, for plaintiff-respondent.

REINHARD, Presiding Judge.

The State Tax Commission appeals an order by the Circuit Court granting taxpayer an exemption from ad valorem tax on a portion of taxpayer's property and a residential rather than commercial classification on the rest. We reverse and remand in part and affirm in part.

Village North, Inc. (taxpayer) is a not-for-profit Missouri corporation that was created to construct and operate certain types of facilities for the elderly. It is wholly owned by the Christian Health Services Development Corporation (CHSDC) a not-for-profit corporation which also owns Christian Hospital Northeast–Northwest. The real property that is the subject of this dispute is Village North, a "life-care community" for persons who are 62 years of age and older. The property has six buildings, four of which contain a total of 214 apartments. The fifth building is a 60 bed skilled nursing facility and the sixth is used for administration.

Each resident of Village North pays an entrance endowment fee, and a monthly service fee that covers such items as maintenance, linen, transportation and one meal per day in the dining room. In exchange for payment of these fees, which vary according to the size of the unit selected, the resident is entitled to lifetime tenancy in his or her chosen apartment and unlimited care in the nursing facility whenever necessary.

The facility is governed by a Board of Directors who are also closely connected to CHSDC with the exception of one board member who must be, by law, a resident of the facility. In addition, the facility has an elected Residents' Council which advises the Board on issues of interest to residents.

While the screening process for the selection of residents includes analysis of financial ability to pay, no such requirement exists with respect to non-residents who seek admission to the skilled nursing facility. The only prerequisites for a non-resident to be admitted are that a doctor refer them and that some improvement in their physical condition be foreseeable. Mental-

ly ill patients are not accepted because of the lack of required security safeguards in the facility. Approximately 50% of the beds in the facility are, at any one time, occupied by non-residents. There was some evidence that if the facility were full and a resident needed a bed a non-resident would be transferred to make room. Lack of ability to pay has never caused a transfer.

The St. Louis County Assessor's office classified all of the property as commercial. After an unsuccessful appeal to the County Board of Adjustment, Village North filed Complaints for Review of Assessment with the Missouri State Tax Commission for 1985 and 1986. An evidentiary hearing was held in 1987.

Village North contended that the nursing care facility should be exempt from taxation as a charitable institution and that the rest of the facility should be classified as residential rather than commercial property. In support of its position Village North offered substantial documentary evidence about the operations of Village North. The executive director and chief financial officer also testified about the structure and finances of the facility. The County Assessor insisted that the entire facility must be considered as an integrated whole and that all portions of it existed solely for the benefit of the relatively well-to-do residents. In addition, to justify the commercial classification rather than residential the Assessor cited § 137.016, RSMo 1986, which limited a residential classification to dwellings of four (4) units or less or to condominiums and housing cooperatives. In his order the hearing officer accepted the county's reasoning as to classification but found the nursing facility to be exempt. Both Village North and the County appealed to the full Commission.

The Commission denied both of Village North's claims. Village North appealed to the Circuit Court which reversed the Commission on both points. This appeal by the Commission followed.

■ This court reviews the findings and decision of the agency and not the judgment of the circuit court when sitting in review of an administrative agency. *City of Cabool v. Mo. State Bd. of Mediation,* 689 S.W.2d 51, 53 (Mo. banc 1985). In addition, we are mindful of the fact that the law disfavors claims for exemption. *Mo. Church of Scientology v. State Tax Comm'n.,* 560 S.W.2d 837, 844 (Mo. banc 1978) and that we must give due weight "to the expertness and experience of the particular agency." § 536.140.3, RSMo 1986.

■ The first issue is whether the skilled nursing facility meets the requirements for a charitable exemption articulated in § 137.100, RSMo 1986 and explained in the leading case on this issue, *Franciscan Tertiary Prov. v. State Tax Comm'n.,* 566 S.W.2d 213 (Mo. banc 1978). Section 137.-100 states that "[t]he following subjects are exempt from taxation for state, county or local purposes: ... (5) All property, real and personal, actually and regularly used exclusively for religious worship, for schools and colleges, or for purposes purely charitable and not held for private or corporate profit." *Franciscan* has identified three specific elements that must be satisfied:

1) The property must be owned and operated on a not-for-profit basis;

2) the property must be unconditionally dedicated to the charitable use, and no private profit may result;

3) the dominant use of the property must benefit society generally as an indefinite number of people. 566 S.W.2d at 224.

The Commission agreed that the Nursing facility met parts one and two of the *Franciscan* test because the ownership and operation of the facility is wholly not-for-profit. It gave great weight, however, to the possibility of exclusion of a non-resident in favor of a resident and cited this as its reason for determining that Village North did not meet the requirements of the third element of the *Franciscan* test: "Village North's policy of allowing non-residents access to their facilities is admirable. However, because many people are 'systematically denied' health care because of the facilities being full or a resident needing care and receiving priority over the non-resident, the charitable exemption elements

are not met." The record shows that the denial of services relied upon by the Commission had occurred twice during the past five years. This must be contrasted with the fact that approximately thirty out of the sixty beds available have been used for non-residents. The Commission seems to have misinterpreted the case law to require that every member of the public who desires space at Village North must be admitted. This requirement has been expressly disallowed in a case from this court, *Affiliated Medical Transport v. Tax Comm'n.*, 755 S.W.2d 646 (Mo.App.1988) in which an ambulance service had, at times, screened its clients based on their ability to pay.

> "Even if on occasion Affiliated denied medical services in isolated cases solely on the basis of the patient's financial status, Affiliated rendered nonprofit medical services to the community at large, including the provision of its services to the usual and ordinary number of indigent patients...." 755 S.W.2d at 653.

Village North, in contrast, has never denied admission on this basis and indeed, at the time of the hearing, had at least one patient who had remained for two years in spite of his inability to pay the full cost of services rendered. Clearly their acceptance of this patient and all other non-residents "makes it less likely that they will become burdens on society ..." *Salvation Army v. Hoehn*, 354 Mo. 107, 188 S.W.2d 826, 830 (Mo. banc 1945). This case can be distinguished from *Evangelical Retirement Homes of Greater St. Louis, Inc. v. State Tax Comm'n.*, 669 S.W.2d 548 (Mo. banc 1984) in which a retirement home admitted no one who did not have specified asset amounts available to defray the cost of care. "Money—and a substantial sum of it—is the qualifying factor for admittance into the home." *Id.* at 557. The Supreme Court in denying an exemption in this case compared the operation of this facility for the aged with the one at issue in

*Franciscan* and concluded that to qualify for an exemption "the operation of a charitable home for the aged must take into account the ability to pay of the entire spectrum of the aged." *Id.* at 556. The facts of *Evangelical* offer a clear example of the systematic denial of services that would preclude a charitable exemption.[1] The practices of Village North do not approach this level.

The Commission also asserts that a partial exemption would be inappropriate because "[e]valuation of the total operation of Village North led the Commission properly to conclude that, although it is owned and operated on a not-for-profit basis, its reason for existence, and the dominant use of the entire Village North facility, including the nursing facility, is for the benefit of the village...."

A similar issue was presented to our supreme court in *Barnes Hospital v. Leggett*, 589 S.W.2d 241, (Mo. banc 1979), in which an eleven story building was used partially for private offices and partially for medical school activities. The court abandoned the "all or nothing" rule of earlier cases and granted a partial exemption "[for] those portions of Queeny Tower which meet the *Franciscan* test." *Id.* at 244. See also *St. Louis County v. Christian Hospital, Etc.*, 589 S.W.2d 246 (Mo. banc 1979).

Our analysis has convinced us that Village North is entitled to the partial exemption for that percentage of its facility that is used solely for the nursing facility. The figure of 9.4% of the total property has been used throughout these proceedings as the appropriate percentage for exemption without objection. We adopt that percentage and order the Commission to grant the partial exemption sought.

■ The Commission also decided that the subject property should be classified as commercial rather than residential. It based its decision upon its interpretation of

---

1. An additional example of systematic denial of services may be found in our recent case, *Cape Retirement Community, Inc. v. Harold D. Kuehle*, 798 S.W.2d 201 (Mo.App.1990), in which a retirement community sought an exemption for its entire facility. We denied the exemption because of the striking similarities to the facts of *Evangelical.*

the definitions of residential property found in § 137.016.1(1), RSMo 1986:

"*Residential Property*," all real property improved by a structure which is used or intended to be used for residential living by human occupants and which contains not more than four dwelling units or which contains single dwelling units owned as a condominium or in a cooperative housing association. The term "*cooperative housing association*" means an association, whether incorporated or unincorporated, organized for the purpose of owning and operating residential real property in Missouri, the shareholders or members of which, by reason of their ownership of a stock or membership certificate, a proprietary lease or other evidence of membership, are entitled to occupy a dwelling unit pursuant to the terms of a proprietary lease or occupancy agreement[.]

The taxpayer has consistently claimed that Village North is similar to a cooperative and should be treated as one. The taxpayer supported this contention by referring to § 137.016.3 which states:

All real property which ... is used for a private club, a *not for profit* or other non exempt lodge, club, business, trade, *service organization*, or similar entity; or for which a determination as to its classification cannot be made under the definitions set out in subsection 1 of this section, shall be classified according to its *immediate most suitable economic use* ... (emphasis ours).

Village North argued that because the property is used for a "not-for-profit service organization" or, alternatively, because it did not fit into the definitions of § 137.016.1 the Commission should evaluate the property as directed by subsection 3, according to economic use.

The Commission rejected this argument by interpreting § 137.016.1(1), RSMo 1986: ... the Commission interprets "Cooperative" as meaning, the residential tenant owns stock in the corporation, which is considered personal property and is transferable, along with having a proprietary leasehold interest.

... While the instant case has all the trappings of a cooperative housing association, a more detailed viewing shows that the residents have only a life estate in the subject property. The stocks are used as showing membership for the tenant and not as representing stock ownership in the corporation. Consequently, section 137.016(3) RSMo (1986) is not needed to determine the proper classification of the subject property.

We agree that the subject property does not conform to the required statutory definition. The residents have neither the ownership interest or the degree of control necessary for Village North to qualify as a cooperative housing association. However, we disagree with the Commission's refusal to consider § 137.016(3) in its deliberations. We are required to discern the intent of the legislature by reading the statutes it has written in their entirety rather than piecemeal. *See Bartley v. Sp. Sch. Dist. of St. Louis City,* 649 S.W.2d 864 (Mo. banc 1983). In § 137.016(3) the legislature has manifested the intent that property owned by a non-profit service organization be evaluated somewhat differently than property owned by a private citizen or a corporation. However, our analysis of the directions of § 137.016(3) with regard to this property supports the ultimate decision of the Commission that the property should be taxed at the commercial rather than the residential rate. The physical structure is such that were this complex owned by a private for profit organization it clearly would be operated as an apartment complex. *See Rothschild v. State Tax Com'n. of Missouri,* 762 S.W.2d 35, 37 (Mo. banc 1988). As such, it would be classified as commercial property. Thus we hold that the term "immediate most suitable economic use" mandates classifying this property as commercial. The judgment of the Circuit Court is reversed in part and affirmed in part.

STEPHAN and CRANE, JJ., concur.