Eugene **ZIMMERMAN**, In his Official Capacity as Assessor for St. Charles County, MO., Respondent/Cross–Appellant,

v.

**MISSOURI BLUFFS GOLF JOINT VENTURE**, Whitwalt Joint Venture and Bogey Hills Golf and Country Club, Appellants/Cross–Respondent.

No. ED 78943.

Missouri Court of Appeals, Eastern District, Division Four.

June 5, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 19, 2001.

Application for Transfer Denied Aug. 21, 2001.

David L. Welsh, St. Louis, MO, for appellants.

John R. Moellenkamp, Lisa Leslie, St. Charles, MO, for respondent.

Byron E. Francis, St. Louis, MO, amicus curiae.

LAWRENCE E. MOONEY, Presiding Judge.

Appellants/Cross–Respondents, Whitwalt Joint Venture, Bogey Hills Golf and Country Club, and Missouri Bluffs Golf Joint Venture (collectively referred to as "Country Clubs"), appeal from the decision of the State Tax Commission ("Commission") affirming the Chief Hearing Officer's ruling that all land at issue in the case should receive a residential classifica-

tion and all improvements should be assigned a commercial classification. Country Clubs argue the Commission erred in affirming the commercial classification of the improvements because: (1) such improvements are part of "land used as a golf course" as that phrase is used in the definition of "residential property" in Section 137.016.1(1) RSMo. (2000)[1]; and (2) the Commission refused to consider and apply the classification factors set forth in Section 137.016.5, which would have shown that a residential classification applied to Country Clubs' improvements.

Respondent/Cross–Appellant, Eugene Zimmerman ("Assessor"), filed a cross-appeal alleging that the Commission erred in ruling that the land on which Country Clubs' improvements sit is residential because the land is not "land used as a golf course" as that phrase is used in the definition of "residential property" in Section 137.016.1(1); rather, the land supports commercial improvements and should receive a commercial classification. Assessor further argues that under Article 10, Section 3 of the Missouri Constitution, a commercial classification is appropriate.

We affirm in part and reverse and remand in part.

## Facts

The facts are not in dispute. Country Clubs are all located in St. Charles County, and their property consists of large tracts of land occupied by golf courses. Bogey Hills Golf and Country Club ("Bogey Hills") and Whitwalt Joint Venture, doing business as Whitmoor Country Club ("Whitmoor"), are both private golf and country clubs, while Missouri Bluffs Golf and Country Club ("Missouri Bluffs") operates a public golf course and country club.

Bogey Hills consists of two tax parcels that Assessor referred to as Parcels A and B. Regarding Parcel A, Assessor assigned a residential classification to both the land on which golf was played and improvements necessary to the development of a golf course such as bunkers, tee boxes, sand traps, and greens. The remainder of Parcel A, which consisted of improvements such as a clubhouse, pools, refreshment stands, sheds, fences, lights, basement, and concrete/asphalt areas, was classified as commercial. In addition, Parcel B, an asphalt parking lot that serves Bogey Hills, was also classified commercial. After classifying the property, Assessor calculated the assessed value of the land and improvements under Section 137.115.5 requiring residential property to be taxed at 19% and commercial property at 32% of its true value. Bogey Hills disputed the Assessor's calculated assessment of that portion of land and improvements in Parcel A classified as commercial. It further claimed that Assessor should have classified Parcel B as residential instead of commercial.

Whitmoor consists of three tax parcels which the Assessor called Parcels A, B, and C. Parcel A contains land on which golf is played and was classified residential. This parcel also contains the following improvements, which the Assessor classified as commercial: two maintenance sheds, a mobile home used as a maintenance office, and a wood deck on that office. In addition, Assessor classified Parcel B as commercial property, which includes: land, clubhouse, patio, pools, shed, fence, lights, and concrete/asphalt areas. Regarding Parcel C, Assessor classified some of the land as residential and categorized a golf cart storage shed, refreshment stands, fence, concrete, canopy, pro shop, pool storage area, pool snack bar

1. All statutory references are to RSMo. (2000)   unless otherwise noted.

and locker building, as commercial property. Whitmoor asserts that all of these improvements on Parcels A, B, and C were improperly classified as commercial rather than residential.

Missouri Bluffs tax parcel contains an eighteen-hole golf course, which Assessor classified as residential. It also includes the following items classified as commercial property: other land, clubhouse, restrooms, storage building, lights, asphalt golf-cart paths, asphalt parking lot, canopy, golf course maintenance shed, greenhouse, sand hopper, wall, and other asphalt and concrete areas. Missouri Bluffs alleges the land and improvements in its tax parcel should have been classified residential.

Country Clubs appealed the Assessor's classifications to the Commission, whose Chief Hearing Officer determined that all land at issue in the cases before the Commission should be classified as residential and all improvements should be assigned a commercial classification. This determination created the anomalous situation of improvements classified as commercial being located on land classified as residential. The parties appealed the decision to the St. Charles County Circuit Court, which affirmed the Commission's decision. Country Clubs then appealed the ruling to the Missouri Supreme Court, which transferred the case to the Court of Appeals.

*Analysis*

■ When sitting in review of an administrative agency, we review the findings and decision of the agency, not the judgment of the circuit court. *Village North, Inc. v. State Tax Com'n of Missouri*, 799 S.W.2d 197, 199 (Mo.App. E.D. 1990). Furthermore, when an administrative decision is based on the agency's interpretation and application of the law, we review the administrative conclusions of law and its decision de novo, and we make corrections to erroneous interpretations of the law. *St. Louis County v. State Tax Com'n*, 562 S.W.2d 334, 337–38 (Mo. banc 1978). Because the Commission interpreted several statutes to reach its decision, we independently review its decision.

With this standard of review in mind, we turn to the parties' allegations of error. We will address Country Clubs' first contention of error and the Assessor's cross-appeal together because the root of both claims of error is that the Commission misinterpreted the definition of "residential property" in Section 137.016.1(1). Country Clubs argue in their first point that the Commission erred in failing to order a residential classification of their improvements because they are part of "land used as a golf course" as that phrase is used in the definition of "residential property" in Section 137.016.1(1). More specifically, Country Clubs contend that their improvements are essential to the operation of a golf course complex and thus, should receive a residential classification.

Assessor, however, argues the Commission erred in classifying the land on which the improvements are situated as residential property because the land is not "land used as a golf course" as that phrase is employed in Section 137.016.1(1). Further, Assessor claims that only the land on which golf is played warrants a residential classification. All other land and improvements should be classified as commercial.

■ We think our holding is mandated by the fact that the legislature used the phrase "land used as a golf course," and not the phrase "real property used in connection with a country club," in describing the property entitled to residential classification. To determine what is "land used as a golf course" we must look at both the

statutory definitions of "residential property" in Section 137.016.1(1) and "real property" in Section 137.010(3) and interpret the meaning of each. In interpreting these statutes, we ascertain the intent of the legislature from the language used and give effect to that intent if possible. *Budding v. SSM Healthcare System*, 19 S.W.3d 678, 680 (Mo. banc 2000). Further, words used in the statute will be given their plain and ordinary meaning, absent a statutory definition. *L.C. Development Co., Inc. v. Lincoln County*, 26 S.W.3d 336, 340 (Mo.App. E.D.2000). Every word of a statute is used for a purpose, and the legislature is presumed not to enact meaningless provisions or intend an absurd result. *Boyd v. State Bd. of Registration for Healing Arts*, 916 S.W.2d 311, 315 (Mo. App. E.D.1995).

We first turn to Section 137.016.1, which defines "residential property" as follows:

(1) **"Residential property"**, all real property improved by a structure which is used or intended to be used for residential living by human occupants, vacant land in connection with an airport, *land used as a golf course,* and manufactured home parks, but residential property shall not include other similar facilities used primarily for transient housing ... (emphasis added).

To find the plain meaning of "land" we look to how it is commonly defined. In reviewing dictionary definitions, we found that "land" may refer to either the ground itself or the ground and accompanying structures. "Land" is ground or soil in respect to its situation, nature, or quality. WEBSTER'S 3RD NEW INTERNATIONAL DICTIONARY 1268, 3a (1967). Elaborating on this concept of land, Black's Law Dictionary states " '[l]and' is not the fixed contents of that space." Rather, "'[l]and is immovable, ... it is also, in its legal significance, indestructible. The contents of the space may be physically severed, destroyed or consumed, but the space itself, and so the 'land' remains immutable." BLACK'S LAW DICTIONARY 881 (7th ed.1999), *quoting* Peter Butt, *Land Law* 9 (2d ed.1988). However, "land" is also more broadly defined as any part of the earth's surface that can be owned as property, and everything annexed to it, whether by nature or by the human hand. WEBSTER'S 3RD NEW INTERNATIONAL DICTIONARY 1268, 4b; THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE (2d ed.1987).

Generally, if we find a tax provision ambiguous, we are bound to construe the ambiguity in favor of the taxpayer. *Morton v. Brenner*, 842 S.W.2d 538, 542 (Mo. banc 1992). Here, however, we find no ambiguity. The statutory definition of "residential property" refers to "real property" in contradistinction to "land." Section 137.016.1. "Real property" is defined elsewhere in the same chapter as: "land itself ... and ... all growing crops, buildings, structures, improvements and fixtures of whatever kind thereon...." 137.010(3). Clearly, the legislature did not consider the terms "real property" and "land" to be coextensive. "Real property" is land plus "growing crops, buildings, structures, improvements, and fixtures." Thus, inverting the definition of "real property," "land" is real property minus "growing crops, buildings, structures, improvements, and fixtures." According to the legislature, "land" is only a subclass of what may be called "real property." "Land" is the ground alone.

We now look at what the legislature intended by the language "used as" in the phrase "land used as a golf course." The plain meaning of "used" is "to put into action or service." *Webster's Third New International Dictionary.* To further determine the intent of the legislature, we look at the context in which words are

used. *Lincoln County Stone Co., Inc. v. Koenig,* 21 S.W.3d 142, 146 (Mo.App. E.D. 2000). Elsewhere in Section 137.016.1(1) the legislature used the phrase "vacant land *in connection with* an airport." (emphasis added). It is significant that the legislature chose "used as" in relation to golf courses, but it employs "in connection with" regarding airports. "Used as" is a narrower phrase than "in connection with." In the definition of "residential property," if the legislature had intended to include anything other than land which is "put into action or service" to play golf, it would have used a broader phrase such as "in connection with."

Next, we look at the plain and ordinary meaning of "golf course" as it is used in the phrase "land used as a golf course." A "golf course" is an "area of land laid out for the game of golf with a series of 9 or 18 holes each including tee, fairway, and green and often one or more natural or artificial hazards." *Webster's 3rd New International Dictionary.* Golf is not played on barren untouched land. Rather, certain improvements are necessarily incident to a golf course: tee boxes, bunkers, greens, sand traps, golf cart paths, and maintenance sheds. A "golf course," however, does not include the amenities of a "country club," which is "an upper-class suburban or outlying club or clubhouse for social life, golf, and other recreation." *Webster's 3rd New International Dictionary.* Clubhouses, pools, parking lots, and pro shops are amenities of a "country club" and are not necessarily incident to the operation of a "golf course." It might be argued that a parking lot, in these car-reliant times, and a pro shop are necessarily incident to the operation of a golf course. But a parking lot that facilitates the use of not only the golf course, but also other functions of a country club, such as a restaurant, or swimming pool, is not entitled to residential classification. Similarly,

a pro shop that provides not only for the payment and scheduling of games of golf, but also the sale of golf equipment, golf clothes and other sundries, is not entitled to such classification. We do not believe the legislature intended that such parking lots and pro shops are embraced by the phrase "land used as golf course."

Moreover, the legislature authorized the more beneficial residential classification to what would normally be commercial enterprises that leave the land largely undeveloped: "vacant land in connection with an airport, land used as a golf course, and manufactured home parks." Obviously clubhouses and swimming pools do not leave the land largely undeveloped. We believe the legislature's largesse in authorizing a residential classification extends to the land and links of eighteen holes, but not to the locker-rooms and lounges of the nineteenth hole.

■ Finally, we further interpret the phrase "land used as a golf course" in light of Article 10, Section 3 of the Missouri Constitution, which requires that assessment and collection of taxes be uniform within the classes and subclasses. Although the legislature has discretion to make classifications for tax purposes, it may not create a tax class without reason. *Gage & Tucker v. Dir. of Revenue,* 769 S.W.2d 119, 124 (Mo. banc 1989). However, Country Clubs' broad interpretation of "land used as a golf course" to include restaurants, pro shops, and the like, would create an unreasonable classification by deeming such improvements residential simply based on their proximity to a golf course.

Therefore, we hold that "land used as a golf course" is the ground itself on which the game of golf is played as well as improvements that are necessarily incident to the operation of a golf course. Thus,

the Commission improperly classified some of Country Clubs' land and improvements under its interpretation of "land used as a golf course." We reverse the decision and remand to allow the parties to adduce additional evidence to show which improvements are necessarily incident to the operation of a golf course.

■ In their second point, Whitmoor and Bogey Hills (collectively "Private Clubs") argue that the Commission failed to consider and apply the property classification factors set forth in Section 137.016.5, and if it had done so, the Commission would have classified Private Clubs' improvements as residential.[2] We disagree.

Generally, Section 137.016.1 is applied to classify different types of property for tax purposes.[3] However, if property cannot be classified under the subclasses in that section, then it may be classified by considering the factors set out in Section 137.016.5 to determine the property's immediate most suitable economic use:

All real property ... which is for a private club, a not for profit or other nonexempt lodge, club, business, trade, service organization, or similar entity ... shall be classified according to its immediate most suitable economic use of the property, which shall be determined after consideration of:

(1) Immediate prior use, if any, of such property;

(2) Location of such property;

(3) Zoning classification of such property; except that, such zoning classification shall not be considered conclusive if, upon consideration of all factors, it is determined that such zoning classifica-

tion does not reflect the immediate most suitable economic use of the property;

(4) Other legal restrictions on the use of such property;

(5) Availability of water, electricity, gas, sewers, street lighting, and other public services for such property;

(6) Size of such property;

(7) Access of such property to public thoroughfares; and

(8) Any other factors relevant to a determination of the immediate most suitable economic use of such property.

Further, *Village North, Inc. v. State Tax Com'n of Missouri*, 799 S.W.2d 197 (Mo.App. E.D.1990) holds that the Commission must consider the factors in Section 137.016.5 when property cannot be classified under Section 137.016.1. In *Village North*, Village North Inc, operated a "life care community" for elderly persons, including two hundred fourteen apartments and a sixty-bed skilled nursing facility. 799 S.W.2d at 198. The Missouri State Tax Commission appealed the circuit court's decision that the Village North property should be classified as residential for tax purposes. *Id.* at 199. Because the property did not fit within the definition of "residential property" in Section 137.016.1(1), the court applied the factors set out in Section 137.016.5. *Id.* at 201. In determining the property's immediate most suitable economic use, the court held "the physical structure is such that were this complex owned by a private for profit organization it clearly would be operated as an apartment complex. (citation omitted). As such it would be classified as commercial property." *Id.*

---

**2.** Because Missouri Bluffs is a public course, it is not subject to this statute.

**3.** Section 137.016.1 contains the definitions of the subclasses of property: residential; agri-cultural and horticultural; and utility, industrial, commercial, railroad and other real property.

Here, as *Village North* directs, the Commission did consider the factors in determining that the improvements should be classified as commercial. It found "[n]one of the factors individually nor all of the factors collectively, as applied to the structures and improvements on the subject property will support a residential classification." Clearly, the Commission considered the factors in reaching this conclusion. Furthermore, we agree with the Commission's finding that the properties' immediate most suitable economic use would be as public golf courses. Private Clubs argue that their land and improvements should receive a residential classification because if the golf courses were removed and the land graded, the area would be ideal for a community of residential homes. However, the plain language of the statute requires that we consider the "*immediate* most suitable economic use." Section 137.016.5 (emphasis added). In doing so, we find that because Private Clubs have the equipment and facilities needed to convert from private golf clubs to public golf clubs, any improvements and land that do not fall within "land used as a golf course" should receive a commercial classification. Point denied.

We affirm the decision of the Commission as to the residential classification of the land on which golf is played and the commercial classification of clubhouses, swimming pools, parking lots, and a pro shop. We reverse the residential classification of land beneath these improvements for reclassification as commercial. The remainder of the decision is reversed and remanded for proceedings consistent with this opinion.

PAUL J. SIMON, J., and SHERRI B. SULLIVAN, J., concur.