**Gregory F.X. DALY, License Collector of the City of St. Louis, Missouri, Appellant/Cross–Respondent,**

v.

**The STATE TAX COMMISSION, Douglas W. Burnett, Bruce E. Davis, and Sam Leake, as Commissioners of the State Tax Commission, and ADM Milling Co., Respondent/Cross–Appellant.**

**No. ED 82220.**

Missouri Court of Appeals, Eastern District, Division One.

Nov. 4, 2003.

---

1. The appellant's motion to transfer is denied.

David P. Weiss, Weiss & Associates, P.C., St. Louis, MO, for Appellant/Cross–Respondent.

Lisa S. Leary, Helmut Starr, Suelthaus & Walsh, P.C., Clayton, MO, for Respondent/Cross–Appellant.

GARY M. GAERTNER, SR., Presiding Judge.

Appellant/Cross–Respondent, Gregory F.X. Daly, License Collector of the City of St. Louis ("License Collector"), appeals the judgment of the Circuit Court of the City of St. Louis in favor of respondent/cross-appellant, ADM Milling Co. ("ADM"). Li-

cense Collector appeals the trial court's judgment affirming the State Tax Commission's ("Commission") denial of License Collector's motion to strike ADM's testimony and exhibits and the Commission's determination that the excluded property is not subject to the manufacturer's tax. ADM filed a cross-appeal of the trial court's decision finding the Commission exceeded its jurisdiction in considering the classification issue for the 1995 and 1996 tax years. We affirm.

In ADM's Manufacturer's Property Declaration for the years 1995 and 1996, the valuation of the machinery, tools, and appliances differed significantly from the years prior to 1995. The St. Louis Board of Merchants' and Manufacturers' Tax Equalization ("Board") affirmed raise notices with respect to the value of ADM's property subject to the manufacturer's license tax. ADM filed appeals for review of their assessments with the Commission for both years, alleging "overvaluation." The 1995 and 1996 appeals were consolidated on January 7, 1997.

License Collector also rejected ADM's Manufacturer's Property Declarations for 1997, 1998, and 1999, which also resulted in raise notices being issued by the Board. ADM again appealed to the Commission for review of its assessments. However, on these appeals, it alleged overvaluation and misclassification. After ADM raised the issue of misclassification, License Collector filed a motion for pre-hearing conference and for stay of exchange of discovery with the Commission on March 14, 1997. In this motion, License Collector argued the Commission had no jurisdiction to consider the issue of misclassification of the property for the years 1995 and 1996 because that issue was not raised in those appeals. On March 17, 1997, the Commission denied License Collector's motion and held that it had jurisdiction to "all questions and disputes involving the assessment against . . . property."

On July 21, 1997, License Collector and ADM stipulated as to the property subject to the appeal. On July 24, 1997, the Commission accepted their stipulation and directed that they file with the Commission on or before September 5, 1997, a copy of all written direct testimony and exhibits to be introduced at the evidentiary hearing on September 11, 1997. The date of the evidentiary hearing was later changed to September 18, 1997 after License Collector filed a motion for continuance.

License Collector submitted copies of the written direct testimony of witnesses expected to testify and its exhibits on September 5, 1997. The Commission received these materials on September 8, 1997. On September 9, 1997, ADM filed written testimony of a witness it expected to testify at the evidentiary hearing along with a list of its exhibits. License Collector filed a motion to strike ADM's testimony and exhibits because they were filed late. The Commission denied License Collector's motion to strike at the evidentiary hearing on September 18, 1997 and issued a formal order to this effect on September 22, 1997.

At the evidentiary hearing, Scott Brooks, ADM's milling maintenance superintendent, testified regarding the classification of ADM's property for the purpose of imposing the manufacturer's license tax. Gerald L. Huether, a licensed Missouri State General Real Property Appraiser, David Sanders, the assistant deputy director of the license collector's office, and David G.F. Schmidt, an auditor at the license collector's office, all testified for the same purpose on behalf of License Collector.

On November 25, 1997, the Commission entered an order reclassifying as fixtures some of the property originally assessed by License Collector. License Collector

and ADM stipulated to a consent judgment for the 1995, 1996, 1997, and 1998 appeals on November 2, 1998, but entry of the judgment was delayed in the hope of reaching a complete settlement among ADM, License Collector, and the Assessor of the City of St. Louis regarding the issue of fixtures in this case as well as for future years' assessments.

On March 21, 2000, the Commission entered an order consolidating the appeals for 1995, 1996, 1997, 1998, and 1999. The Commission ordered the parties to amend the November 2, 1998 stipulation to cover the 1999 appeal. After the parties had amended the stipulation, an order approving the stipulation would be entered. On May 1, 2000, the parties amended the November 2, 1998 stipulation to include the 1999 appeal.

Accordingly, on May 9, 2000, the Commission entered the consent judgment to which ADM and License Collector had stipulated. This judgment resolved the classification and valuation of certain property as fixtures not subject to the manufacturer's license tax and other property as machinery, tools, and appliances subject to the tax. The consent judgment also included a class of certain property entitled "Excluded Property." This class included the following: 1) spouting; 2) electrical items denoted item electrical, process electrical, conduit, wiring, panels, breakers, transformers and control centers; 3) buckets, legs, bins, boots, and housing; 4) engineering, work, or labor; and 5) boilers. The right to further appeal the classification of the Excluded Property was expressly reserved in the consent judgment.

License Collector filed an "Application for Review" with the Commission regarding the Chief Hearing Officer's decision to allow the issue of classification to be appealed to the Commission for the years 1995 and 1996, the classification of the Excluded Property, and the admission of ADM's pre-filed direct testimony and exhibits at the September 18, 1997 evidentiary hearing. The Commission denied this application and affirmed the Chief Hearing Officer's decision. The Commission also affirmed the Chief Hearing Officer's decision that all of the Excluded Property was "annexed and adapted to the realty and that the nature of that annexation or adaptation suggested the intent that those items become fixtures to the realty."

License Collector appealed the Commission's decision to the circuit court. The circuit court reversed the Commission's decision regarding its jurisdiction over the claims of misclassification for 1995 and 1996, but affirmed the Commission's decisions regarding the admissibility of ADM's evidence at the evidentiary hearing and the classification of the Excluded Property as fixtures. License Collector appeals, and ADM cross-appeals.

■ When sitting in review of an administrative agency, we do not review the circuit court's opinion, but rather we review the findings and decision of the agency. *Zimmerman v. Missouri Bluffs Golf Joint Venture*, 50 S.W.3d 907, 910 (Mo. App. E.D.2001). While undertaking this review, we are limited to determining whether the decision constituted an abuse of discretion, whether it was supported by competent and substantial evidence on the whole record as a whole, or whether it was arbitrary, capricious or unreasonable. *Hermel, Inc. v. State Tax Commission*, 564 S.W.2d 888, 894 (Mo.banc 1978).

■ In his first point on appeal, License Collector argues the Commission erred in admitting ADM's written direct testimony, exhibits, and direct testimony at the evidentiary hearing conducted September 18, 1997.

■ A trial court, and by extension the Commission, retains broad discretion over the discovery process and the admissibility of evidence. *Hancock v. Shook,* 100 S.W.3d 786, 795 (Mo.banc 2003) *see also Bruflat v. Mister Guy, Inc.,* 933 S.W.2d 829, 833 (Mo.App. W.D.1996). The court may admit or exclude challenged evidence on the basis that it was not disclosed according to discovery rules. *Redfield v. Beverly Health and Rehab., Inc.,* 42 S.W.3d 703, 711 (Mo.App. E.D.2001). Appellate courts will not interfere with those decisions unless there is a clear showing of abuse of discretion. *Id.* An abuse of discretion occurs when a court's ruling is so clearly against the logic of the circumstances before it and is so unreasonable and arbitrary that it shocks one's sense of justice and indicates a dearth of careful, deliberate consideration. *Id.* The court did not abuse its discretion if reasonable persons can differ as to the propriety of its action. *Id.*

■ Further, we will not construe a statute or regulation to produce unreasonable, oppressive, or absurd results. *Kincade v. Treasurer of State of Missouri,* 92 S.W.3d 310, 311 (Mo.App. E.D.2002). We will give the words in a statute or regulation their plain or ordinary meaning. *Id.* However, we will also construe all of the provisions of the statute or regulation together and will harmonize all of the provisions if reasonably possible. *Id.*

On July 24, 1997, the Commission ordered the parties to file with the Commission, on or before September 5, 1997, "a copy of all exhibits to be introduced in the evidentiary hearing on the issue of the property in contention being subject to assessment for the tax years 1995 and 1996." The Commission further ordered the parties to file the written direct testimony of each witness to be called at the evidentiary hearing and to exchange a copy of all written direct testimony and exhibits between themselves. The evidentiary hearing was scheduled for September 11, 1997. On August 21, 1997, the Commission granted the Collector's motion for continuance and scheduled the evidentiary hearing for September 18, 1997.

The Commission received the Collector's exhibits on September 8, 1997 after they were filed on September 5. On September 9, 1997, ADM submitted the pre-filed testimony of Scott Brooks and exhibits A through Y. On September 17, 1997, the Collector filed a motion to strike this evidence. A formal order was issued denying the Collector's motion to strike on September 22, 1997. The Commission stated that although the evidence was filed late, the Collector had adequate time to prepare for cross-examination and was not prejudiced by the late filing.

The Collector relies on two Commission cases, *Quincy Soybean Company v. Rushton,* STC Appeal No. 97–66500, 53rd Annual STC Report 481 (1998), and *Lee v. King,* STC Appeal No. 97–20287, 54th Annual STC Report 343 (1999). However, both of these cases are distinguishable on the facts because both concern the introduction of evidence at or after the scheduled evidentiary hearing. In *Quincy,* the Commission refused to allow additional evidence offered after the hearing officer held an evidentiary hearing and decided the case based on the evidentiary record. *Quincy Soybean Company,* STC Appeal No. 97–66500 at 483. In *Lee,* Lee presented written direct testimony of an expert, but the hearing officer found the expert was unqualified. *Lee,* STC Appeal No. 97–20287 at 347–48. When Lee presented an offer of proof at the evidentiary hearing eliciting additional information regarding the expert's background and experience, the Commission rejected it because it was not

in compliance with the scheduling order. *Id.*

The Collector also maintains that in construing a similar regulation, we held that if the parties are going to utilize appraisal reports, "the reports must be exchanged prior to the evidentiary hearing." *Moore v. State Tax Com'n of Missouri,* 862 S.W.2d 407, 409 (Mo.App.E.D.1993). The regulation at issue in *Moore* was 12 CSR 30–3.060 Exchange of Appraisal Reports.[1] *Id.* It provided in pertinent part:

> [a]s soon as practicable after the filing of an appeal concerning a commercial property with the commission, the parties *shall* exchange any appraisal reports proposed to be admitted at the evidentiary hearing of the case. The appraisal reports shall be exchanged at the pre-hearing conference for the case, unless otherwise ordered by the commission.... The purpose of this rule is to allow for full and fair cross-examination at the evidentiary hearing. Any appraisal reports which have not previously been exchanged in accordance with this rule or which have not been offered for exchange at the pre-hearing conference *will* be excluded from admission into evidence at the evidentiary hearing. (emphasis added). 12 CSR 30–3.060(1) (1993).

The regulation at issue in this case provides in pertinent part:

> [t]he commission, or hearing officer, *may* order the exchange of exhibits and written direct testimony of all witnesses in advance of the pre-hearing conference. The order *shall* establish a schedule of deadlines and other requirements.... The purpose of this rule is to allow for full and fair cross-examination at the evidentiary hearing. Any exhibit

or written direct testimony which has not previously been exchanged in accordance with this rule *will* be excluded from admission into evidence at the evidentiary hearing. This *shall* not preclude the offering of ... other exhibits and related testimony which were not available at a time such that they could have been exchanged on the exchange date. 12 CSR 30–3.060(1) (1996).

In *Moore,* the Assessor submitted an appraisal report at the pre-hearing conference on August 30, 1990. *Moore,* 862 S.W.2d at 408. Moore stated that he would not provide an appraisal report, but that he planned to testify as to the value of the parcels at the evidentiary hearing. *Id.* The Commission sustained the Assessor's motion to preclude such evidence based on 12 CSR 30–3.060(1), which addressed the exchange of appraisal reports. *Id.* However, we later reversed this decision and found the oral testimony should be admitted when we considered the legislative act as a whole together with the Commission's pamphlet on appellate procedure, which explained that the best evidence is a report by a competent appraiser, but a property owner's opinion of value will be considered. *Id.* at 411.

In this case, the regulation's stated purpose is to "allow for full and fair cross-examination at the evidentiary hearing." 12 CSR 30–3.060(1). It should be noted that originally the evidence was to be filed with the Commission on or before September 5, 1997, and the evidentiary hearing was scheduled for September 11, 1997. However, the evidentiary hearing was later postponed until September 18, 1997 while the September 5 deadline remained. ADM submitted the additional evidence on

---

1. This regulation, dealing with the exchange of appraisal reports, can now be found at 12 CSR 30–3.065 (2003).

September 9, 1997. According to the original schedule, the Commission only provided for six days between the deadline for filing evidence and the evidentiary hearing.

Unlike in the cases relied on by the Collector, ADM submitted the disputed evidence nine days before the evidentiary hearing. While ADM was not in technical compliance with the deadline established by the Commission, it also did not try to introduce its evidence at or after the evidentiary hearing. Because the admission of ADM's evidence complies with the stated purpose of 12 CSR 30–3.060 and the hearing officer has broad discretion to allow evidence that is not in technical compliance with discovery rules, we find the Commission did not err in admitting ADM's written direct testimony, exhibits, and direct testimony. Point denied.

In his second point on appeal, License Collector argues the Commission erred in finding that the spouting, electrical items and components, buckets, legs, bins, boots, housings, and boilers constituted fixtures.

 We consider the evidence in the light most favorable to the Commission, together with all reasonable inferences therefrom. *Daly v. P.D. George Co.*, 77 S.W.3d 645, 648 (Mo.App. E.D.2002). If the evidence supports either of two opposing findings, we are bound by the Commission's determination. *Id.* Further, we have noted the wisdom of the General Assembly in providing an administrative agency to deal with matters of property tax assessment. *Savage v. State Tax Com'n of Missouri*, 722 S.W.2d 72, 75 (Mo. banc 1986). Proper methods of evaluation and assessment of property are delegated to the Commission, and courts may not assess property for tax purposes. *P.D. George Co.*, 77 S.W.3d at 648. Overall, we are hesitant to substitute our judgment for the Commission in matters of property tax assessment. *Savage*, 722 S.W.2d at 75.

Unless there is a clear abuse, we will defer to the Commission. *Id.*

 "A fixture is an article in the nature of personal property which has been so annexed to the realty that it is regarded as part of the land and partakes of the legal incidents of the freehold and belongs to the person owning the land." *Rothermich v. Union Planters Nat. Bank,* 10 S.W.3d 610, 614 (Mo.App. E.D.2000). To determine whether property has become a fixture, a court evaluates three factors: 1) the annexation to the realty; 2) the adaptation to the use to which the realty is devoted; and 3) the intent that the object become a permanent accession to the land. *Id.* Whether or not a certain piece of property qualifies as a fixture depends upon the facts and circumstances of a particular case. *Id.* The intent of the annexor at the time it is made is controlling as to whether a piece of property is considered a fixture. *Id.* at 615.

 In this case, the Shreve Avenue facility has been used to mill flour since its initial construction in 1918. The photographs that make up ADM's exhibits, as well as the photographs in License Collector's exhibits, provide a reasonable basis for one to conclude that annexation and adaptation has occurred with respect to the excluded property. Further, Scott Brooks, the milling maintenance superintendent for the Shreve Avenue facility, testified that

[s]ome items are cast into the concrete structure of the mill, primarily through the floors. The bucket elevator system and much of the spouting and ductwork in the mill, for example, are items that would have to be cut into pieces to be removed. Other items such as electrical conduit, wiring within the conduit, panels, transformers and control centers are attached to the mill building by bolts

and brackets. The truck scales, rail car dump bins, and truck dumps outside the mill have been bolted down into and anchored into the exterior concrete driveways in a permanent manner. . . . Brooks also testified that it would be cost prohibitive to remove and sell the custom fabricated spouting, ductwork, and bins separate from the buildings. Further, Brooks testified that the boilers provide heat for the employees in the mill and for the flour dryer. The fact that the boilers provide heat for both the building and the flour dryer indicates they were annexed and adapted to the use of the property and their removal would constitute a major modification.

Having found that ADM's disputed evidence was properly admitted, we find that there was competent evidence to support the Commission's decision that the spouting, electrical items and components, buckets, legs, bins, boots, housings and boilers constituted fixtures. Point denied.

■ In its sole point on cross-appeal, ADM argues the trial court erred in not permitting it to contest the classification of property subject to Manufacturer's License Tax for the years of 1995 and 1996.

■ Any taxpayer wishing to pay taxes under protest shall, at the time of paying such taxes, file with the collector a written statement, which sets forth the grounds on which his protest is based. Section 139.031.1 RSMo (2000). The legislature has noted that payment under protest must be on the basis of a then perceived specific entitlement to relief, and not on the basis of a general claim that taxpayer hopes he may substantiate later by finding some justification and authority. *Metal Form Corp. v. Leachman,* 599 S.W.2d 922, 925 (Mo.banc 1980).

In *Metal Form,* plaintiffs' original protest letters accompanying their payments of their taxes alleged unconstitutionality on the basis of Article X, Section 4(a) of the Missouri Constitution. *Id.* at 924. However, when the case was submitted to the trial court for decision, plaintiffs amended their petitions to allege that in addition to Article X, Section 4(a), the taxing statute also violated Article X Sections 3 and 6 of the Missouri Constitution. *Id.* The Supreme Court held that the only issue presented for decision was whether the tax creates an impermissible sub-classification of tangible personal property in violation of Article X, Section 4(a) because that was the only infirmity asserted by the plaintiffs in their letters accompanying their tax payments. *Id.* at 924–25.

In *Boyd–Richardson Co. v. Leachman,* 615 S.W.2d 46, 49–50 (Mo.banc 1981), the Supreme Court, relying largely on the *Metal Form* rationale, held that a protest made dependent on the eventual outcome of another lawsuit does not set forth a then perceived specific entitlement to relief. The court then held a letter stating no other specific grounds was wholly insufficient, declining to afford such protest letters the same "liberal construction" that a court affords ordinary pleadings. *Id.*

On the complaint form for review of assessment, there are five boxes corresponding to the grounds upon which a taxpayer can challenge his or her assessment. The instructions on the form instruct the taxpayer to "check one or more as applicable." The possible choices are overvaluation, discrimination, misclassification, exemption, misgraded agricultural land, and other.

In this case, on ADM's Complaints for Review of Assessment, it specified only "overvaluation" and did not check the box for "misclassification" for the years 1995 and 1996. According to the *Metal Form* rationale, a deviation from or expansion of the grounds asserted in the protest letter

does not qualify as a then perceived specific entitlement to relief. Further, the purpose of the protest letter is not only to put the government on notice of the taxpayer's dissatisfaction, but also to define the grounds upon which the taxpayer relies. *B & D Inv. Co., Inc. v. Schneider,* 646 S.W.2d 759, 762 (Mo.banc 1983) *quoting* 84 C.J.S. Taxation § 638 (1974). Therefore, because ADM's Complaints for Review of Assessment did not specify "misclassification" for the years 1995 and 1996, this issue was not properly before the Commission. Accordingly, we affirm the decision of the trial court. Point denied.

Based on the foregoing, we affirm the judgment of the trial court.

ROBERT G. DOWD and MARY R. RUSSELL, JJ., concur.