ALGONQUIN GOLF CLUB, Golf Club Inv. Co., Bogey, Inc., Forest Hills Golf & Country Club, Log Cabin Club, St. Louis Country Club, Old Warson Country Club, Sunset Country Club and Westwood Country Club, Appellants,

v.

STATE TAX COMMISSION of Missouri and Philip A. Muehleheausler, Assessor of St. Louis County, Respondents.

No. ED 87894.

Missouri Court of Appeals,
Eastern District,
Division Two.

March 20, 2007.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 23, 2007.

Application for Transfer Denied
May 29, 2007.

416

Byron E. Francis, Cynthia A. Petracek, St. Louis, MO, for Appellant.

Paula J. Lemerman, County Counselor Office, Clayton, MO, for Respondent.

GEORGE W. DRAPER III, Presiding Judge.

Algonquin Golf Club, et al., (hereinafter, "the Clubs") appeal from the trial court's judgment affirming the State Tax Commission's (hereinafter, "the STC") classification of certain portions of private golf courses and country clubs owned by the Clubs as commercial property. The Clubs raise one issue on appeal, challenging the classification of the amenities on the properties as commercial, and arguing the decision was not supported by competent and substantial evidence. We reverse and remand.

The facts are undisputed. The Clubs are not-for-profit, private country clubs. The properties at issue are large tracts of land occupied by golf courses in St. Louis County. Originally, the properties were classified entirely as residential property for ad valorem tax purposes. In 2003, the Assessor of St. Louis County (hereinafter, "the Assessor") reclassified the properties as part residential and part commercial. The land used as a golf course was classified as residential. The amenities adjacent to the golf course, such as pro shops, locker rooms, clubhouses, restaurants, and parking lots, were classified as commercial and subsequently assessed a value at the commercial tax rate. The Clubs' properties were then taxed in accordance with the new commercial classifications, which the Clubs appealed. The St. Louis County Board of Equalization upheld the classification. The Clubs appealed to the STC.

The STC held an evidentiary hearing. The parties stipulated to the admission of the written direct testimony of managers and other officers of the Clubs and various exhibits. The parties also stipulated to the admission of written direct testimony of Richard Shepard (hereinafter, "Shepard") and Dennis Walters (hereinafter, "Walters"), subject to cross-examination by the Assessor at the hearing. The Assessor did not offer any evidence, other than cross-examining the Clubs' experts. Further, the parties entered into an extensive stipulation with respect to many of the facts at

issue. Those stipulated facts established the following:

The Clubs are private country clubs that operate on a not-for-profit basis. Each private country club has a golf course, pro shop, clubhouse, and other amenities ordinarily associated with a country club. These other amenities include: locker rooms, indoor/outdoor dining areas, entertainment facilities, bars, kitchens, swimming pools, fitness centers, offices, golf cart storage, maintenance buildings, tennis courts, and croquet courts. Not every property contains all of the above listed amenities.

The revenues generated through membership fees and sales of food or merchandise equal the Clubs annual operating expenses. Thus, the Clubs' operate on a "break-even" basis. The properties are used solely for social and recreational purposes. The Clubs' by-laws and rules prohibit use of the properties for trade, commerce, industrial or similar business purposes. The Clubs have operated in this manner for several decades.

The Clubs require membership in order to gain access to the property and employ an extensive, formal membership approval process. As a result, the use of the properties is not open to the public, nor is the public generally invited to use the property, except on a limited basis as guests of existing members.

The property use surrounding each of the Clubs is primarily single-family residences. There is no commercial development adjacent to any of the Clubs, with the exception of Sunset Country Club, which has a mixture of commercial and residential developments near it. None of the Clubs have direct access to arterial roads. All of the Clubs are serviced by available utilities, sewers, street lighting, and other public services.

The zoning for each of the properties is dependent upon the municipality in which it is located. Generally, the zoning in each municipality permits using the property for, among other things, residential use and as private golf courses. The present zoning scheme prohibits commercial building or use as a public golf course. Further, each municipality specifically limits the use of the property to the uses enumerated under the applicable ordinances. In the case of Sunset Country Club, Sunset Hills does not permit commercial use and will not issue a conditional use permit for commercial buildings. Four of the properties are subject to an indenture, duly recorded with the Recorder of Deeds, which restricts the use of the properties to private country clubs or single-family residences, and specifically prohibits any use for a commercial purpose.[1] Additionally, six country clubs cannot be converted to public golf courses because these properties are subject to zoning ordinances that do not allow special permits to be issued for such a conversion.[2] Furthermore, the parties agreed there would be issues regarding available utilities, sewers, street lighting, and public services with respect to capacity if any of the properties were redeveloped as commercial property.

1. The Clubs subject to these indentures are: Forest Hills Country Club, Old Warson Country Club, St. Louis Country Club, and Westwood Country Club. These indentures can be found at the St. Louis County Recorder of Deeds office as follows: Forest Hills Country Club, Book 5252, Page 559; Old Warson Country Club, Book 3305, Page 351; St. Louis Country Club, Book 3017, Page 220; and Westwood Country Club, Book 7676, Page 1092.

2. The Clubs restricted by these ordinances are: The Bogey Club, Forest Hills Country Club, Old Warson Country Club, St. Louis Country Club, The Log Cabin Club, and Westwood Country Club.

After reviewing all of the evidence, the STC issued its findings of fact and conclusions of law. The STC recognized all of the stipulated facts and cited the eight factors for determining classification from Section 137.016.5 RSMo (2000).[3] The STC determined *Zimmerman v. Missouri Bluffs Golf Joint Venture*, 50 S.W.3d 907 (Mo.App. E.D.2001) controlled its decision. The STC stated:

> The Commission has applied those factors to the facts at hand and finds that the immediate most suitable economic use for all the properties would be as golf courses. The Commission is not persuaded that current zoning restrictions and certain legal covenants would present sufficient obstacles to prohibit the conversion of these courses to public golf courses. All other factors, including immediate prior use; location; availability of water, electricity, gas, sewers, street lighting, and other public services for such property; size of such property; and access of such property to public thoroughfares, support this conclusion.

The STC concluded the residential classification could not attach to the land or improvements used for the amenities of the Clubs. Therefore, the STC determined those portions must be classified as commercial property. The Clubs sought review of the STC's decision in St. Louis County Circuit Court. The circuit court affirmed the STC's decision. The Clubs appeal.

On appeal, this Court examines the underlying decision of the administrative agency, the STC, and not the judgment of the trial court. *Shipman v. Dominion Hospitality*, 148 S.W.3d 821, 822 (Mo. banc 2004). While undertaking this review, we are limited to determining whether the decision constituted an abuse of discretion, whether it was supported by competent and substantial evidence on the record as a whole, or whether it was arbitrary, capricious, or unreasonable. *Daly v. State Tax Com'n*, 120 S.W.3d 262, 266 (Mo.App. E.D.2003). We consider the evidence in the light most favorable to the Commission, together with all reasonable inferences therefrom. *Daly v. P.D. George Co.*, 77 S.W.3d 645, 648 (Mo.App. E.D.2002).

This Court is hesitant to substitute our judgment for the STC in matters of property tax assessment. *Savage v. State Tax Com'n*, 722 S.W.2d 72, 75 (Mo. banc 1986). If the evidence supports either of two opposing findings, we are bound by the STC's determination. *Daly*, 120 S.W.3d at 269. Unless there is clear abuse, we will defer to the STC. *Id.* "When an administrative decision is based on the agency's interpretation and application of the law, we review the administrative conclusions of law and its decision *de novo*, and we make corrections to erroneous interpretations of the law." *Twelve Oaks Motor Inn, Inc. v. Strahan*, 96 S.W.3d 106, 109 (Mo.App. S.D.2003). The STC interpreted Section 137.016 to reach its decision; therefore, we independently review its determination *de novo*. *Missouri Bluffs*, 50 S.W.3d at 910.

In its sole point on appeal, the Clubs argue the circuit court erred in affirming the STC's decision because it was not supported by competent and substantial evidence, was arbitrary and capricious, and was unauthorized by law. The Clubs allege the STC failed to apply the factors set forth in Section 137.016.5 when determining the proper classification of the amenities at the country clubs. Further, the Clubs argue the undisputed evidence establishes use as a public golf course is not

---

**3.** All statutory references are to RSMo (2000) unless otherwise indicated.

the immediate most suitable economic use. Rather, the Clubs claim the undisputed evidence supports the finding that the immediate most suitable economic use for the properties is to convert them to residential homes. As a result, the amenities should be classified as residential for tax assessment purposes.

Section 137.016.1(1) defines "residential property" to include, *inter alia,* "land used as a golf course." The Clubs do not dispute the residential classification of the land at the country clubs that is used as a golf course, nor do the Clubs attempt to argue on appeal that the amenities should be considered as a part of the "land used as a golf course," and as a result, should receive residential classification. *Cf. Missouri Bluffs,* 50 S.W.3d at 912. Rather, the Clubs focus on the STC's alleged failure to apply the eight factors enumerated in Section 137.016.5 when classifying the amenities. Section 137.016.5 states:

> All real property which is vacant, unused, or held for future use; which is used for a private club, a not-for-profit or other nonexempt lodge, club, business, trade, service organization, or similar entity; or for which a determination as to its classification cannot be made under the definitions set out in subsection 1 of this section, shall be classified according to its immediate most suitable economic use, which use shall be determined after consideration of:
>
> (1) Immediate prior use, if any, of such property;
>
> (2) Location of such property;
>
> (3) Zoning classification of such property; except that, such zoning classification shall not be considered conclusive if, upon consideration of all factors, it is determined that such zoning classification does not reflect the immediate most suitable economic use of the property;

> (4) Other legal restrictions on the use of such property;
>
> (5) Availability of water, electricity, gas, sewers, street lighting, and other public services for such property;
>
> (6) Size of such property;
>
> (7) Access of such property to public thoroughfares; and
>
> (8) Any other factors relevant to a determination of the immediate most suitable economic use of such property.

The Clubs allege the STC failed to consider each of these factors when reaching its decision. The Assessor disagrees, citing the language excerpted *supra* from the STC's decision as support. Moreover, both parties focus on the phrase, "immediate most suitable economic use." The Clubs focus on the word "economic," while the Assessor focuses on the word "immediate."

 Statutory interpretation is purely a question of law. *Glasgow Enterprises, Inc. v. Bowers,* 196 S.W.3d 625, 631 (Mo. App. E.D.2006). When interpreting a statute, this Court must determine the intent of the legislature, give the language used its plain and ordinary meaning, and give effect to that intent, if possible. *Christensen v. American Food & Vending Services, Inc.,* 191 S.W.3d 88, 90 (Mo.App. E.D. 2006). We presume the legislature intended every word, clause, sentence, and provision of a statute to have effect and did not insert superfluous language into the statute. *Abbott Ambulance v. St. Charles County Ambulance Dist.,* 193 S.W.3d 354, 358 (Mo.App. E.D.2006).

Assessor asserts *Missouri Bluffs* controls and is directly on point with the case at bar. The Clubs disagree, and urge us to distinguish *Missouri Bluffs* based on the undisputed facts presented with respect to the zoning obstacles and that the Clubs' experts presented uncontroverted

evidence that the immediate most suitable economic use of the properties at issue is as residential property.

This Court in *Missouri Bluffs* had to resolve a similar issue. In that case, country clubs in St. Charles County appealed the STC's decision where land at issue received a residential classification, while the improvements and amenities on the land were classified as commercial. *Missouri Bluffs*, 50 S.W.3d at 909. After conducting a detailed analysis of Section 137.016.1, which defines residential property, this Court held "land used as a golf course" was "the ground on which the game of golf is played as well as improvements that are necessarily incident to the operation of a golf course." *Id.* at 912. Similarly, this Court opined the legislature did not intend that the various amenities of the country club, such as clubhouses, pools, pro shops, and parking lots "are embraced by the phrase 'land used as [a] golf course.'" *Id.*

Since these amenities were not encompassed within the definition of "land used as a golf course," and therefore, did not meet Section 137.016.1's definition of residential property, this Court reviewed the STC's application of the eight factors enumerated in Section 137.016.5 to determine the amenities' immediate most suitable economic use. *Id.* at 913. This Court concluded the STC considered the eight factors based on its statement in its decision, "[n]one of the factors individually nor all of the factors collectively, as applied to the structures and improvements on the subject property will support a residential classification." *Id.* at 914. Further, this Court agreed with the STC that the *imme-*

*diate* most suitable economic use of the country clubs' properties would be as public golf courses after examining the plain language of Section 137.016.5. *Id.* (Emphasis in original). "In doing so, we find that because [the country clubs] have the equipment and facilities needed to convert from private golf clubs to public golf clubs, any improvements and land that do not fall within 'land used as a golf course' should receive a commercial classification." *Id.*

Here, however, based on the unique facts and circumstances of the case at bar, as developed through the extensive evidentiary record presented by the Clubs, we believe this case is distinguishable from *Missouri Bluffs*. In all cases, the taxpayer has the burden of proof when challenging the STC's assessment of property. *Reeves v. Snider*, 115 S.W.3d 375, 379 (Mo. App. S.D.2003). In response to that burden, the Clubs presented undisputed, detailed evidence outlining the zoning restrictions which permit the properties to be used for only residential purposes or as private golf courses. In every instance, the municipalities where the Clubs reside either prohibit commercial building or public golf courses,[4] or there are indentures which restrict the use of the properties to private country clubs or single-family residences, and specifically prohibit any use for a commercial purpose.[5] Moreover, the Clubs' expert, Shepard, testified municipal officials indicated public golf courses would not be welcomed or permitted.

The Assessor failed to present any evidence whatsoever to dispute these assertions. In fact, the Assessor stipulated to the Clubs' assertion regarding the zoning

4. The Clubs restricted by these ordinances are: The Bogey Club, Forest Hills Country Club, Old Warson Country Club, St. Louis Country Club, The Log Cabin Club, and Westwood Country Club.

5. The Clubs subject to these indentures are: Forest Hills Country Club, Old Warson Country Club, St. Louis Country Club, and Westwood Country Club.

obstacles and indentures. Further, the record is completely devoid of any discussion of how the zoning restrictions and indentures could be overcome, so as not to be deemed "sufficient obstacles," and thereafter, permit use of the properties as public golf courses. The Assessor engaged in limited cross-examination of the Clubs' experts which resulted in no change in the witnesses' positions nor recitation of evidence contrary to the Clubs' position. Thus, we hold the STC's finding that it was not persuaded that "current zoning restrictions and certain legal covenants would present sufficient obstacles to prohibit the conversion of these courses to public golf courses" was not supported by competent and substantial evidence.

Next, we turn to the STC's decision that the "immediate most suitable economic use" of the properties is as public golf courses. The Assessor argues *Missouri Bluffs* controls because of its emphasis on the word "immediate." We disagree. While we realize our Court in *Missouri Bluffs* placed an emphasis upon the word "immediate" when rendering its decision, we recognize we must also look at the word "economic" because we presume the legislature intended every word, clause, sentence, and provision of a statute to have effect and did not insert superfluous language into the statute. Our *Missouri Bluffs* case does not place any emphasis on the economic evidence presented to the STC, but states conclusively, "[The country clubs] argue that their land and improvements should receive a residential classification because if the golf courses were removed and the land was graded, the area would be ideal for a community of residential homes." *Missouri Bluffs*, 50 S.W.3d at 914.

In this case, as opposed to the bare bones argument put forth in *Missouri*

*Bluffs*, the Clubs presented ample uncontroverted evidence through stipulated facts and expert testimony that it would be economically unfeasible to convert the private golf course buildings and amenities into public golf courses. Shepard testified if the Clubs ceased operations as private golf courses, the immediate most suitable economic use of the properties, including the amenities, would be as residential developments. Shepard detailed the high demand for single family residences where the Clubs are located. Further, he testified the area was not suitable for commercial development based upon the current zoning restrictions and inadequate public access. Walters also testified the conversion of the private courses to public ones would be cost-prohibitive because the land was too expensive. He opined a developer of a public golf course would not be able to acquire these courses for conversion because the land would cost between $100,000 and $300,000 per acre. This would result in greens fees of approximately $200 to $500 for an eighteen-hole round of golf to cover the cost of acquiring the property and converting it into public courses.[6]

When construing the phrase "immediate most suitable economic use" as a whole, the record in this case cannot support a finding that the immediate most suitable economic use of the properties is as public golf courses. The uncontroverted evidence presented at the hearing reveals the *immediate* most suitable *economic* use of the properties at issue is as private residences, not public golf courses. While we acknowledge the Clubs' properties have amenities that could be used on a public golf course, the stipulated record also indicates significant zoning obstacles and indentures. In light of those obstacles, we

---

**6.** Greens fees are the costs which a player must pay in order to play a round of golf.

cannot say the record would support an *immediate* use of the private golf course amenities as public golf courses.

We do not believe the *Missouri Bluffs* holding was intended to bind each and every subsequent tax assessment with respect to the amenities of a private country club with private golf courses being classified as commercial property. To do so would render the legislature's directive to examine all eight factors of Section 137.016.5 in each circumstance meaningless. Rather, *Missouri Bluffs* is applicable to the named clubs under the specific circumstances presented in that case. Likewise, our holding is unique to the facts and circumstances as they were developed through this record. Such holding shall remain binding on the parties unless the conditions on said properties change or abate. Just as assessments may be challenged annually, a future assessment may present a record on behalf of the taxpayer or Assessor which may necessitate a change in the tax classification of the Clubs' amenities.

Based on the foregoing, we hold the STC's commercial classification of the amenities of the Clubs' properties is not supported by competent and substantial evidence. We reverse and remand the cause for proceedings consistent with this opinion.

GARY M. GAERTNER, SR., J., and ROBERT G. DOWD, JR., J., concur.